MILLER, Appellant v. MILLER, Respondent

(157 N.W.2d 537)

(File No. 10392. Opinion filed March 27, 1968)
Rehearing denied April 16, 1968

**Ken C. Graves,** Rapid City, for plaintiff and appellant.

**Charles R. Hayes,** of **Hayes & Richards,** Deadwood, for defendant and respondent.

RENTTO, Judge.

Plaintiff husband sued for divorce alleging extreme cruelty. Defendant wife denied his cause of action and counterclaimed for a divorce on the same grounds. The judgment dismissed his complaint on its merits and granted her a divorce. He was given custody of their two minor children, but she was granted the right to have them with her every other weekend and during the entire month of July, during which month the plaintiff would pay her $100 for their support. In lieu of a property division he was ordered to pay her $25,000 on or before January 1, 1967 and until such payment was made he was to pay her $150 per month for her support and maintenance. He was also required to pay her $2,000 as attorneys fees.

On this appeal the husband questions only the $25,000 awarded her and the allowance of attorneys fees.

These parties were married on February 18, 1940, at which time he was 24 years of age and she was 19. Neither owned any property of consequence when they were married. Four children were born to them, but two of them were adults when the judgment was entered. The minor children were a girl, age 10, and a boy, age 8. During the early years of their marriage they lived on several different rented farms in Butte County. In 1948 they began to acquire a farm unit of their own on which they lived until their divorce. During the years of their marriage defendant performed the household duties that go with farm living and on occasions when necessary she assisted with the field work.

They got along reasonably well until June 15, 1964 when she left the farm home and went to live elsewhere. She secured employment at the hospital in Deadwood. On July 10, 1964 plaintiff commenced his action for divorce. According to his proofs at the trial the extreme cruelty he was relying on grew out of her continued association with another man. In September 1964 the parties agreed to resume living together and she returned to their home on September 18th. Their efforts to re-establish their home succeeded for awhile, but gradually the discord that they had known before, returned. She became distraught and was highly nervous.

In January of 1965 she went with her husband to Sioux Falls. While there she received psychiatric treatment. She remained there until April 1, 1965 when she returned to Sturgis, but not to their farm home. After this her answer and counterclaim in his divorce action were supplemented to allege a condonation of the cause of action alleged in his complaint. This the court found as a fact.

The trial of this action was commenced on August 31, 1965 and continued on September 1 and 2, 1965. Additional testimony was heard on December 21, 196̄5 and the taking of evidence concluded on July 19, 1966. The judgment was dated September 8th

and filed on September 9, 1966. In its first memorandum decision, which by reference was made a part of its formal decision, the court indicated that it would award to the defendant 1/3rd of the net value of all the property owned by the parties and requested that counsel attempt to negotiate the valuation and manner of payment. This they were unable to agree on so a further hearing was had.

The farm unit which they finally put together contained 358 acres of which 233 acres are under irrigation. The court found it to have a value of $63,000. Plaintiff argues that this over values the property. However, it accords with the testimony of the defendant's expert witness on values. The sugar plant at Belle Fourche was closed in the fall of 1964. Before it was closed this farm was given largely to the production of sugar beets. Now it is used to raise beans, corn, sorghum, oats and hay. Plaintiff claims that the closing of the sugar plant reduced the value of the farm and that the court has not given this factor any consideration. His contention is not well taken because the defendant's witness, whose testimony on value the court accepted, said that he had considered this fact in arriving at his opinion. The court also found that the personal property was worth $15,000 for a total valuation of $78,000.

When examined as a witness on September 1, 1965, the plaintiff gave testimony as to his debts. At that time he owed the Federal Land Bank about $11,000 which was secured by a mortgage on the farm. He was indebted to the Bank of Belle Fourche in the sum of $13,000 which was secured by a second mortgage on the farm and a mortgage on his equipment and machinery. In addition he owed between five and six thousand dollars in unsecured debts. In arriving at the amount of the cash payment that defendant should receive in lieu of a property division the trial court considered the amount owed to the Federal Land Bank, but disregarded the amount owed to the Bank of Belle Fourche and the unsecured debts.

In the determination of alimony or in making an equitable division of property the debts of the husband should

be considered and deductions made from his income or property therefor, so that the rights of his creditors may not be defeated. 27A C.J.S. Divorce § 233(5) and 27B C.J.S. Divorce § 295(2). While this court seems never to have held so expressly, many of our cases indicate that we have consistently honored such rule. The estate of the husband which is taken into consideration in fixing alimony or dividing the property is usually the estate which he owned at the time of the decree. 27A C.J.S. Divorce § 233(3) (b) and 27B C.J.S. Divorce § 295(1). Because the decree was not entered until a little over a year after the trial was started we think that the above rule should not be applied here. The trial court asked to be furnished the amount of the mortgage debts as of September 1, 1965, the day after evidence was first taken at the trial. This we think was the proper date to consider his debts.

In its supplementary decision which was also made a part of the formal decision the trial court said: "The account with the Bank of Belle Fourche appears to represent a line of credit to finance his current crop operations, a working capital account represented by demand notes and paid off when the crops are harvested and sold. Hence the Court has not considered it for the purpose of determining the amount of the property settlement herein. For the same reason, current liabilities have not been considered." In so concluding we think the court erred.

His account with the Bank of Belle Fourche had been in existence since he had the farm. It was a continuing line of credit to finance his livestock and farming operations which had fluctuated considerably over the years. The record does not show what part, if any, of the amount owed the bank at the time of trial was used to finance his current crop operations. At the time he testified concerning this debt he had no livestock. The farm was then being used for the raising of crops, but there is no evidence from which it could be concluded that such crops upon being harvested would be sold for enough to pay off the amount owed the bank and the unsecured debts. As to the condition and value of these crops the record is silent.

■ Accepting his figures as to his debts as of the date he testified, which are not disputed, they aggregate $29,000. Deducting that sum from $78,000, the valuation of the property found by the court, leaves it a net value of $49,000. On this basis the court in awarding her $25,000 gave to her more than one-half of the property and not the 1/3rd that it had indicated she should receive. In doing so we think the court abused its discretion. Drake v. Drake, 27 S.D. 329, 131 N.W. 294. Requiring him to pay her that amount in a lump sum would very likely necessitate a sale of the farm and put him out of the farming business to which he had devoted his adult life and at which he appears to have been fairly successful.

■ The court in a divorce action has complete jurisdiction of the property of the parties and may dispose of it in such manner as is equitable under all the circumstances. Plageman v. Plageman, 79 S.D. 221, 110 N.W.2d 337. The principal factors to be considered in making an equitable division of property as pointed out in our cases are summed up in Kressly v. Kressly, 77 S.D. 143, 87 N.W.2d 601, as follows:

> "The duration of the marriage, the value of the property of each, their ages, their health and competency to earn, the contribution of each to the accumulation of the property and the faults and circumstances leading up to the divorce. * * *

> "Although the divorce is granted for an offense of the husband yet the acts of both husband and wife leading up to the divorce must be considered by the court in the making of an award to the wife."

Because the divorce is granted for the misconduct of the husband it does not follow that the wife was without fault. Meyer v. Meyer, 76 S.D. 267, 77 N.W.2d 559. We think it must be observed here as it was in Kressly that the record reveals the wife was not without fault and that at least a part of the actions of the husband of which she complained were not without provocation. Obviously that is why she availed herself of the defense of condonation. Another factor which must not be lost sight of is

that the husband will have the burden of supporting and educating these two minor children. We think it fair to conclude from this record that his contribution to the acquisition of this property was much greater than hers. The allowance made to the defendant in lieu of a property division under the circumstances present is inequitable.

 ██ The judgment required plaintiff to pay to defendant $2,000 as attorneys fees and the cost of the action. He was also required, by the trial court, to pay her $1,000 as attorneys fees in defending this appeal and the cost of her brief and the expenses of her counsel in attending oral argument. The plaintiff questions only the fee allowed for the trial of the case. The allowance of such fee rests in the sound discretion of the trial court. Baron v. Baron, 71 S.D. 641, 28 N.W.2d 836. While it appears to be on the liberal side we are not able to say that the court abused its discretion in making such award. She was represented by two counsel at the trial as was the plaintiff.

Another matter in the record, while not going to the merits of the case, has been called to our attention and requires comment. On September 14, 1966, counsel for defendant filed a notice that he claimed a lien against the judgment granted his client for unpaid attorneys fees in the sum of $5,000. In his brief he states that this notice of lien was filed to impede the efforts of outsiders who were importuning his client, who he says was suffering a degree of instability, to act in a manner in disregard of her adjudicated rights.

 On oral argument he indicated that he had no binding agreement with her for additional attorneys fees. If that was the case, then his filing of the notice of lien was not authorized under SDC 1960 Supp. 32.1205(4). A valid contract for fees, either express or implied, between the attorney and his client is necessary for the existence of a lien. 7 Am.Jur.2d Attorneys at Law, § 281. See also Cheshire v. Des Moines City Ry. Co., 153 Iowa 88, 133 N.W. 324. The lien he claims is without foundation so he should promptly release it. Nor would a contract for a fee in which the amount of the fee is contingent on the amount allowed as a property division support a claim of

lien since such contracts in divorce cases are invalid as being against public policy. 7 Am.Jur.2d, Attorneys at Law, § 217; 30 A.L.R. 188.

 This court by SDC 14.0728 is given the power to revise all orders and decrees touching the alimony and maintenance of the wife, including those which are stated to be in the discretion of the court. Kressly v. Kressly, supra. Accordingly, the judgment of the trial court is modified by reducing the award of $25,000 to $16,300. This is 1/3rd of the net value of the property owned by the parties—the share which the trial court indicated she should receive.

In view of her admitted instability this sum is to be paid to her in five equal annual installments, the first of such payments to be made within 60 days after this case is remanded and the remaining payments on the same date in each of the succeeding four years. Until the first annual payment is made plaintiff shall continue the $150 monthly payments to the defendant for her temporary support as ordered by the trial court. The unpaid balance of the sum awarded her is to be a lien on the real property of the plaintiff in Butte County, and bear interest at 5% a year to be paid when the annual installments are paid. The trial court is directed to enter judgment in conformity herewith.

Except as herein modified the portions of the judgment appealed from are affirmed.

HANSON, P. J., and BIEGELMEIER and HOMEYER, JJ., concur.

ROBERTS, J., concurs in result.