**Patti Rae RYKEN, Plaintiff and Appellee,**

v.

**Larry L. RYKEN, Defendant and Appellant.**

No. 16917.

Supreme Court of South Dakota.

Argued May 22, 1990.

Decided Sept. 12, 1990.

Rehearing Denied Oct. 17, 1990.

Arthur L. Rusch of Bogue, Weeks, Rusch & Billings, Vermillion, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

WUEST, Chief Justice.

Pattie R. Ryken (Wife) was granted a divorce from Larry L. Ryken (Husband) on the grounds of extreme cruelty and irreconcilable differences. Husband now appeals from certain parts of this judgment. We affirm in part and reverse and remand in part.

Husband and Wife were married on June 15, 1982. Wife had been married twice before. She had three children by her first marriage, and none by her second. Husband had been married once before and had three children by this marriage. Prior to this marriage, Wife owned only an inexpensive car, her clothing and personal effects. Her education consisted of one year of college, and her work history was limited to part-time sales positions. Her first husband paid her $300 per month in child support. Husband, on the other hand, possessed a college degree and owned, among other things, the Yankton Livestock Company and three-quarters of an interest in the R & R Cattle Company.

The day before Husband and Wife were married, they executed an antenuptial agreement wherein both parties gave up any claim on the personal or real property of the other. Husband contends that Wife had several days to review this agreement and that she, in fact, represented to him she had discussed this agreement with two relatives of hers who had legal backgrounds. Wife, however, disputed this contention claiming the first time she was presented with the agreement was the night before the wedding and even then she did not read the agreement, but just signed it. The antenuptial agreement made no provision for Wife and did not disclose the assets of either party.

After the marriage, Husband and Wife purchased a house in Yankton, South Dakota, where they lived with Wife's three children and the Husband's three children. The two decided to remodel this house shortly thereafter. Wife made all of the arrangements for the remodeling which ended up costing $350,000. Wife also cared for the house and children, handled the family finances and helped occasionally at the Husband's sales barn.

In 1985, the marriage began to deteriorate. The record reflects Husband physically and verbally abused Wife, apparently motivated by jealousy. In April of 1985, Wife left Husband. Wife took along with her $4,500 in cash, some furniture, a 1975 Ford Granada and a 1985 Cadillac. Wife also took Husband's daughter with her and continued to take care of her for a period of time. Husband consented to this. In December of 1985, Wife filed for divorce. Her complaint, which was later amended, alleged extreme cruelty and irreconcilable differences as the grounds for her divorce request. Two years later, Wife was granted a divorce from Husband on the grounds of extreme cruelty and irreconcilable differences.

Pursuant to its divorce judgment, the trial court divided the parties' property, and awarded Wife both $25,000 in permanent alimony and $625 per month for forty-eight months ($30,000) as rehabilitative alimony. Wife was also awarded $6,500 in attorney's fees and $4,000 in appraiser's fees. The trial court disregarded the antenuptial agreement stating that it was inapplicable to a divorce action. Husband appealed from this judgment alleging the trial court erred in dismissing the antenuptial agreement and, alternatively, in dividing the property and in awarding rehabilitative alimony, attorney fees and appraiser's fees.

In *Ryken v. Ryken*, 440 N.W.2d 300 (S.D. 1989) (Sabers, J., specially concurring; Wuest, C.J., concurring in part, and dissenting in part) (*Ryken I*), this Court determined that the trial court erred in disregarding the antenuptial agreement. We found such agreement did contemplate a divorce action and thus it should not have been dismissed on the grounds it did not. We then remanded this issue for the trial court to determine if the antenuptial agreement was to be rejected on other grounds or given effect. Additionally, we held the trial court abused its discretion in awarding rehabilitative alimony to Wife. We also reversed and remanded all aspects of the property division except valuations placed

upon individual assets. Finally, we held the trial court abused its discretion in awarding only a portion of Wife's requested attorney and appraiser's fees. Thus, we remanded this issue to the trial court as well.

On remand, the trial court refused to enforce the antenuptial agreement on the grounds it did not provide for Wife at all, and Husband did not disclose assets to Wife prior to signing the agreement. With respect to the property division, the trial court determined the Wife should receive 10% of the total marital property (or $229,-531) less the value of the cash, furniture and the Ford Granada taken by Wife after the couple's separation. Thus, the Wife received $215,531 from the property division. The trial court also awarded the Wife $40,000 in alimony to be paid in a lump sum. Finally, the trial court directed Husband to pay 90% of Wife's attorney fees ($22,475) appraiser fees ($12,190) and accountant fees ($2,756).

Husband again appeals the judgment of the trial court. He contends the trial court erred in refusing to enforce the antenuptial agreement. He further contends the trial court abused its discretion in dividing the property between Husband and Wife because it failed to consider the property in question was subject to a $1,000,000 debt. He also argues the 10% award to Wife is excessive on its face, even disregarding the debt. In addition, Husband argues the trial court abused its discretion in awarding $40,000 in alimony to Wife because the judgment required Husband to pay that amount and the property award within 30 days of the judgment. Husband contends this imposes an excessive financial burden upon him as such assets are not available to him unless he borrows against or converts his property. Further, Husband argues that the alimony award is excessive when one considers that Wife has been receiving interim support from Husband during the litigation of this matter. Lastly, Husband contends the fees incurred by Wife were not reasonable and thus the trial court abused its discretion in awarding these fees.

We first address the issue of whether the trial court erred in rejecting the antenuptial agreement entered into between Husband and Wife. With regard to antenuptial agreements, this Court has stated:

[A]n antenuptial agreement will be held valid if the prospective spouse can be said to have had adequate knowledge of the nature and extent of the other party's property, either as a result of disclosure by the other party or through the independent knowledge, however acquired, of the prospective spouse, or if the prospective spouse has been adequately provided for by the agreement.

*Ryken I, supra* at 304; *Schutterle v. Schutterle*, 260 N.W.2d 341, 348 (S.D.1977). The validity of an antenuptial agreement is to be decided on the basis of the facts of each case. *Ryken I, supra; Schutterle, supra.*

While Husband does not dispute the legal principle set forth in *Schutterle* and *Ryken I*, he contends this Court should impose upon Wife in this case an obligation to find out what the Husband owned. We decline to do so. This simply places too much of a burden on the spouse against whom the agreement is sought to be enforced; here, the Wife. The burden on the other spouse to disclose his assets is relatively small since that spouse knows what he owns better than anyone else. The argument regarding the validity of the antenuptial agreement could have been easily avoided if the Husband had disclosed his assets to the best of his ability either in the agreement itself or otherwise. Since it is much easier for one spouse to disclose his assets than it is for the other spouse to ascertain the extent of that spouse's assets, we reject Husband's argument that Wife should have had an obligation to find out the extent of Husband's assets.

The trial court found: (1) Husband failed to disclose the extent of his assets to Wife, (2) Wife did not have adequate knowledge of the nature and extent of Husband's property, and (3) the antenuptial agreement did not adequately provide for the Wife. If these findings are not clearly erroneous,

then, according to the rule set forth in *Schutterle*, the antenuptial agreement is not valid. Husband does not dispute any of the aforementioned findings and we find nothing in the record which indicates that such findings are clearly erroneous. Therefore, we uphold the trial court's determination that the antenuptial agreement is invalid.

Next, we address the issue of whether the trial court abused its discretion in awarding wife $215,531 in the property division. Husband contends the trial court abused its discretion in making this division because it failed to consider the marital property was subject to a $1,000,000 debt. This contention is lacking in merit. The record clearly reflects the husband was awarded complete ownership of the Yankton Livestock Market and the R & R Cattle Company. The value of these businesses was not included in the list of marital property to be divided between Husband and Wife. The $1,000,000 indebtedness is attributable to these businesses. It stands to reason since the value of these businesses was not included in the list of assets to be divided, the debt attributable to these businesses should not be included so as to reduce the total value of the marital property. In essence, Husband here wants to divide the debt of these businesses without having to divide their assets. Since the trial court awarded these businesses outright to the Husband, it is only fair under these circumstances he should accept their debts as well.[1] Therefore, we conclude the trial court did not err in disregarding the $1,000,000 debt insofar as this property division is concerned.

Husband contends the property award was excessive and inequitable even in the absence of the trial court's alleged error relating to the $1,000,000 debt. We agree. The principle factors to be considered by the trial court in making a property division are: (1) the duration of the marriage; (2) the value of the property; (3) the ages of the parties; (4) their competence to earn a living; (5) the contribution of each party to accumulation of property; and (6) the income-producing capacity of the parties assets. *Ryken I, supra* at 304; *Cooper v. Cooper*, 299 N.W.2d 798, 799–800 (S.D.1980) (Henderson, J., dissenting); *Wallahan v. Wallahan*, 284 N.W.2d 21, 24 (S.D.1979). At the conclusion of the first trial, the trial court determined that the total marital property of Husband and Wife had a value of $2,295,311. We approved of this valuation in *Ryken I*. The trial court then considered the above factors and indicated that Wife was entitled to receive ten percent of this total amount.[2] We responded to this in *Ryken I*, stating:

> [T]he trial court's findings of fact state that [wife's] contribution amounted to ten percent of property accumulated during the marriage. There is no indication what property she contributed to, unless the court was referring to the marital property, totaling $2,295,311, of both parties as a whole. *Ten percent of this amount is $229,531, which is excessive if it represents the trial court's calculation of [wife's] contribution because most of the property was acquired before marriage.*

*Ryken I, supra* at 304–305 (emphasis added). Having made this statement, we later concluded the trial court abused its discretion in setting forth the property award. Thus, we remanded this issue for further consideration.

On remand of this case, the trial court considered the aforementioned property di-

---

1. If the amount of the debt exceeded the value of the two businesses, then, the imposition of this debt upon the Husband would clearly be unfair, unless of course the Husband was compensated in some other fashion. The record indicates, however, that this debt does not exceed the value of the businesses.

2. Although the trial court made this indication, it only awarded $30,000 to Wife in the property

division. In *Ryken I* we addressed the confusing nature of the trial court's decision, stating:

> The trial court's decision is, in many respects, indecipherable, with language implying an excessive division in [Wife's] favor, yet the property actually awarded unto her was minimal when contrasted to the trial court's language.

*Ryken I, supra* at 305.

vision factors and then determined that Wife was entitled to ten percent of the total value of the marital property minus a few of her expenses. Thus, Wife was awarded approximately $215,531. This award is contrary to our language in *Ryken I* wherein we indicated a property award to Wife of $229,531, was excessive. Although the $215,531 property award to Wife is smaller than this figure, it still is excessive.

 As we noted in *Ryken I*, most of the property the trial court determined to be marital property was accumulated by Husband before the marriage. We recognize the performance of duties as a wife and mother are a valuable contribution to the accumulation of marital property. *Garnos v. Garnos*, 376 N.W.2d 571, 573 (S.D.1985); *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979). In the present case, however, Wife's performance of such duties does not support an award of $215,531. This is true even considering the fact that Husband received all of the income producing assets in this property division and that he is more competent to earn a living than Wife. It must be remembered that Husband and Wife lived together for about three and one-half years. The marriage itself only lasted five years. We also hasten to point out Wife has received approximately $25,000 of temporary support since these divorce proceedings began.[3] This temporary support is essentially an alimony award to Wife. Alimony and property division must be considered together. *Krage v. Krage*, 329 N.W.2d 878, 879 (S.D. 1983). The trial court did not consider this temporary support in its property division or in rendering its alimony award. Considering this temporary support together with the short duration of the marriage and the fact that most of the marital property was accumulated by Husband before the marriage, it is clear the trial court's property award to Wife of $215,531 is excessive.

 This Court, by SDCL 25–4–46, is given the power to revise all orders and decrees touching the alimony and maintenance of a spouse, including those which are stated to be in the discretion of the trial court. *Miller v. Miller*, 83 S.D. 227, 157 N.W.2d 537 (1968). Specifically, SDCL 25–4–46 states:

**Alimony, support, property and child custody provisions subject to review on appeal.** The disposition of the homestead by the court, and all orders and decrees touching the alimony and maintenance of a spouse, and for the custody, education, and support of the children as above provided are *subject to revision* on appeal in all particulars, including those which are stated to be in the discretion of the court. (Emphasis added).

Under the authority provided by this statute, we have previously revised awards under a property division where an abuse of discretion has been established. *Miller, supra.* To avoid the expense of valuable court time as well as the cost of further litigation, we revise the trial court's property division rather than remanding this issue for further consideration. Accordingly, the judgment of the trial court is revised by reducing the property award from $215,531 to $100,000. This award is reasonable under the circumstances, especially since Wife has already received approximately $25,000 in temporary support and will receive another $40,000 in alimony.

 This brings us to the issue of whether the trial court abused its discretion in setting forth the award of alimony. Husband contends the trial court abused its discretion in awarding Wife $40,000 in alimony because in rendering this award the trial court failed to consider the fact Wife had been receiving temporary support for several years. Since we have considered this as a factor in reducing the trial court's property award, we decline to consider it as a factor reducing the alimony award. Husband further contends the trial court

---

**3.** On January 15, 1986, the trial court ordered temporary support of $500.00 per month while the action was pending. On June 3, 1987, the trial court raised the monthly support payment to $600.00 as long as the action was pending.

On April 29, 1988, the trial court ordered Husband to pay Wife temporary support of $400 per month during the appeal process which has continued until the present time.

abused its discretion in rendering this alimony award because it required Husband to pay Wife the full alimony, property and fee award within thirty days of the entrance of the divorce decree. We find no abuse of discretion as to this thirty-day requirement. Pursuant to the divorce decree, Husband was granted virtually all of the marital property. This property has been valued at approximately 2.3 million dollars. Much of this property can be quickly sold by Husband to fulfill the trial court's decree. Furthermore, the record reveals Husband has earned several hundred thousand dollars from his business enterprises in recent years. This evidence indicates that the thirty-day payment requirement is not unduly burdensome to Husband under these circumstances. Husband presents very little evidence to the contrary. Considering these facts together with the fact that it has been approximately nine months since the trial court entered its order, we conclude the trial court did not abuse its discretion in directing Husband to pay the alimony, property and fee award within thirty days of the court's entrance of the divorce decree. Thus, we affirm the alimony award in its entirety.

Finally, we address the issue of whether the trial court abused its discretion in ordering Husband to pay 90% of Wife's attorney's fees, appraiser's fees and accountant's fees. The amount of attorney's fees is dependant on (1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems (7) the time required for the trial, and (8) whether briefs were required. *Lien v. Lien,* 278 N.W.2d 436, 443 (S.D.1979); *Garnos, supra* at 574–75. Considering these factors, the trial court's order directing Husband to pay 90% of the total attorney's fees ($22,475) did not constitute an abuse of discretion.

This divorce action has been litigated in our courts for the past four years. The legal problems involved in this action are somewhat complicated as indicated by the three separate appeals taken to this Court. Indeed, Wife has been required to litigate several issues before a trial court not once, but twice. A great deal of property was involved in this action and the value of this property is high. Much discovery was utilized to determine the nature and extent of Husband's property interests. Further, the record reflects Husband was not cooperative with respect to Wife's discovery requests. Such uncooperativeness clearly created additional labor for Wife's attorney. Finally, we note the extensive nature of the labor and time expended by Wife's attorney is supported by an itemized statement prepared by Wife's attorney. In light of these facts, we conclude the trial court did not abuse its discretion in its award of attorney fees.

In contrast to the attorney's fees, the record is devoid of any evidence the appraiser's fees were reasonable. In finding that such fees were reasonable, the trial court simply indicated Wife's appraiser, who charged $12,190, did more work than Husband's appraiser, who charged ($2,675). This does not mean the appraiser's fees were reasonable. Further, the appraiser's mere statement the fees were reasonable is not sufficient to support a finding that the fees were reasonable. To some extent, evidence must be presented which indicates the amount of time spent on the project and the rates charged for such work, whether it be hourly, daily or otherwise. One must also present evidence showing such rates are reasonable. No such evidence was presented here. Therefore, we remand this issue so additional evidence can be taken in accordance with this opinion and the appraiser's fee determined.

As to the accountant's fees, we conclude the trial court did not abuse its discretion in directing Husband to pay 90% of these fees. Unlike the appraiser, the accountant submitted a bill specifically indicating he worked fifty-two hours on this matter and charged fifty dollars per hour, thus creating a balance due of $2,756, which includes tax. While it may have

been helpful if the accountant had itemized the services rendered, we are satisfied the hours billed is commensurate with the work product presented by the accountant. Further, the fifty dollar hourly rate is clearly not excessive for a certified public accountant.

Wife has submitted a motion for appellate attorney's fees, supported by an itemized statement of services performed and costs. *See Cole v. Cole*, 384 N.W.2d 312, 317–18 (S.D.1986) (Henderson, J., concurring in part; dissenting in part); *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985) (Wuest, Acting J., concurring specially). We determine Wife's request of $2,334.73 is a reasonable amount of attorney's fees for this appeal and thus we award her that amount.

For all of the aforementioned reasons, we remand this case for further consideration on the issue of appraiser's fees. We further direct the trial court to enter a judgment in accordance with this opinion after a determination of Wife's appraiser's fee.

Judgment affirmed in part and reversed and remanded in part.

MILLER, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; dissenting in part).

### I.

I concur on the antenuptial agreement issue.

### II.

I concur on the reversal of the property division issue; this trial court obviously did not obey our mandate in *Ryken I.* Clearly, Appellee Patti Ryken is not entitled to nearly a quarter of a million dollars for a very short, tumultuous marriage infused with lavish entertaining, spending $350,000 to remodel/refurbish a home, and a minimal effort to aid her husband in his business. I dissent to that part of this decision which revises the award to $100,000. She has not earned it; she does not deserve it. I would reverse this award with instructions to the trial court to equitably grant her a *fair* property division. Furthermore, I dissent to a 30–day requirement to pay this property division and other money stipends. It is totally unreasonable considering the financial circumstance of these parties. It is aiding a "gold-digger."

I also dissent to the alimony award of $40,000. It is more "gold-digging" in a domestic relations court in this state. He ought not pay this award. The six controlling factors were not/and are not now considered under *Caughron v. Caughron*, 418 N.W.2d 791 (S.D.1988). Her employment is no worse off than before. She is in reasonably good health and can support herself. She has already actually received over $25,-000 in alimony!

### III.

I concur with the decision on attorney's fees, appraiser's fees and accountant's fees.