Linda K. VOELKER, Plaintiff and Appellee,

v.

Paul W. VOELKER, Defendant and Appellant.

No. 18123.

Supreme Court of South Dakota.

Considered on Briefs on Nov. 29, 1993.

Reassigned March 28, 1994.

Decided Aug. 24, 1994.

---

Shari B. Langner, Sioux Falls, for plaintiff and appellee.

Catherine V. Piersol of Rose and Piersol, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice (on reassignment).

Paul W. Voelker (Father or Husband) appeals from a judgment and decree of divorce awarding custody of the parties' daughters to Linda K. Voelker (Mother or Wife). We affirm in part and reverse in part.

### FACTS

Mother and Father were married on January 7, 1983. Two daughters, Danielle, presently age eight, and Christina, presently age five, were born to the marriage. Father is a technician at McKennan Hospital and has a gross annual income of approximately $40,000, $6,000 of which is rent from farm property he inherited from his father. The parties stipulated that Mother's income from her catering job was $18,200 per year.

Wife filed for divorce from Husband in September, 1991. After a hearing, the trial court awarded her temporary custody of the

children, subject to visitation by Father, and allowed her to remain in the marital home. After this separation, Mother renewed her relationship with a high school boyfriend; this man is now her husband.

In January, 1992, Father filed a motion to obtain custody of the girls and possession of the marital residence, alleging that Mother's abuse of alcohol was endangering the children and asserting that Mother's boyfriend was living in the house and having a negative impact on the children. The court denied Father's motion and left the girls in Mother's care, but ordered no unrelated man be in the marital home between 8:00 p.m. and 10:00 a.m. Evidence at trial showed Mother disobeyed this order and the man remained in the home.

Mother has had continuing problems with depression, anxiety and alcohol abuse. After working steadily for the Presentation Health System for twenty-two years, she lost four jobs between March and November of 1992. She was hospitalized in 1990 for in-patient treatment of depression. Shortly before filing for divorce in 1991, she attempted suicide. She obtained thirty days of in-patient treatment for alcohol abuse in March of 1992.[1]

Father may also have a problem with alcohol use. Evidence showed he routinely consumed five drinks a night during the marriage. A professional alcohol assessment of Father found there was not enough information to diagnose alcohol dependence but recommended he seek counseling for his difficulties. Another professional assessment expressed concern over his drinking and described him as manipulative. The trial court found that Father voluntarily cut out visitation on Friday evenings and Sunday afternoons so he could watch sporting events.

In September, 1992, the trial court granted Mother a divorce on grounds of extreme mental cruelty. Physical custody of the girls was awarded to Mother, who also received the federal income tax exemptions for the children. Father's share of child support was set at $884.00 per month. Mother was awarded thirty-five percent of the farm land inherited by Father and a portion of her attorney's fees. Father appeals.

## ISSUES

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PHYSICAL CUSTODY OF THE CHILDREN TO MOTHER?

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING WIFE THIRTY-FIVE PERCENT OF THE FARM LAND HUSBAND INHERITED?

III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING WIFE A PORTION OF HER ATTORNEY FEES?

IV. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING BOTH FEDERAL INCOME TAX DEPENDENT EXEMPTIONS TO MOTHER?

V. WHETHER EITHER PARTY SHOULD BE AWARDED ATTORNEY FEES FOR THIS APPEAL?

VI. DID THE TRIAL COURT ERR IN GRANTING WIFE A DIVORCE ON THE GROUNDS OF EXTREME MENTAL CRUELTY?

## DECISION

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PHYSICAL CUSTODY OF THE CHILDREN TO MOTHER?

 The paramount consideration for the trial court in deciding the issue of child custody is the temporal, mental and moral welfare of the child. *Peterson v. Peterson*, 449 N.W.2d 835, 837 (S.D.1989); *Lindley v.*

---

1. Two months after the divorce, while this appeal was pending, Mother was found passed out on the floor of her home. She was once again admitted to an inpatient facility for alcohol abuse treatment. The trial court then granted Father temporary custody of the children in an ex parte proceeding. After Mother completed in-patient treatment, the trial court granted her motion to vacate the ex parte order. We do not consider these events in reviewing the trial court's divorce decree.

*Lindley,* 401 N.W.2d 732, 733 (S.D.1987). The trial court exercises broad discretion in awarding custody and its decision will be reversed only upon a clear showing of an abuse of that discretion. *Jones v. Jones,* 423 N.W.2d 517, 519 (S.D.1988); *Anderson v. Anderson,* 472 N.W.2d 519, 520 (S.D.1991). In determining whether there has been an abuse of discretion, this court does not decide whether it would have made the same ruling, but must determine if a judicial mind could have made a similar decision in view of the law and that particular case's circumstances. *Johnson v. Johnson,* 468 N.W.2d 648 (S.D. 1991).

This is another case where the parties put more effort into denigrating one another than into determining what was in the best interests of their children. This put the trial court in the position of determining which parent was "the least worst." *Williams v. Williams,* 425 N.W.2d 390, 392 (S.D.1988); *Henle v. Larson,* 466 N.W.2d 846 (S.D.1991).

The record shows that Mother has a serious problem with mental depression and alcohol abuse. Mother has been hospitalized for depression and attempted suicide, and the record indicates she is still taking prescribed medication in an attempt to control her depression. At first, Mother denied abusing alcohol; subsequently she received in-patient treatment for alcohol abuse. Evidence showed that she stashed bottles of whiskey in hiding spots in the house and car. Testimony was presented that the children found her passed out on the floor on more than one occasion. Once they called a friend to ask what to do when they were unable to awaken her. Mother has also experienced difficulty holding a steady job.

Father has not been a paragon of virtue in these proceedings; he has been described by two psychologists as "manipulative." This is borne out by evidence of his excessive questioning of the children concerning their Mother, discussing his Wife with the neighbors, staking out the marital home to take photographs, searching her garbage and recruiting estranged members of Mother's family as supporters for his position. He reduced visitation with his daughters so he could attend weekend sporting events. The trial court termed him "an abusive individual." Evidence was presented at trial that Husband was uncommunicative during the marriage to the point that he routinely sat downstairs in front of the TV and drank alcohol rather than try to talk out problems. Wife testified that he was unsupportive of her treatment for depression and urged her to cease taking her prescribed anti-depressant medication. He refused to go to marital counseling. Wife testified that he had physically shoved her.

■ The trial court received evidence from two independent experts who interviewed the parents and the children. Dr. Renae Battista–Turbak found that both parents deeply love and care for their children and that the girls have bonded equally to Mother and Father. She stated that both girls had communicated a preference to live with their Mother. Although not controlling, a court may consider the child's parental preference. *Peterson,* 449 N.W.2d at 837.

Dr. Battista–Turbak found that the parents were attempting to manipulate the children, questioning them about the other parent, and belittling the other parent in front of the children. Dr. Battista–Turbak was doubtful Mother had been truthful about her boyfriend living in the house. She also found Father exhibited a passive-aggressive and manipulative personality. Dr. Battista–Turbak voiced concern about parents' consumption of alcohol but believed Father was better able to handle his alcohol use. She did however, "strongly suggest that he refrain from any use while the children are with him or in his care." Dr. Battista–Turbak recommended that Father have physical custody of the children because of her concerns about Mother's ability to meet the children's needs.

Psychologist Elwin R. Unruh interviewed both parents and the children. He too found the parents were manipulating the children; "both parents are so engrossed with their wars that the children are becoming 'ping pong balls' in the midst of their polarization." In his opinion, Mother was dealing with her problems and "in the process of interpersonal growth" while Father "showed a tendency to minimize or deny social adjustment and personal problems." Although Mr. Unruh found

Father more self-assured and thought there would be more stability if the girls were with their Father, he did not find "any inhibiting features of either parent being the primary caretaker." He recommended ongoing therapy for both the children and parents.

After considering this evidence, the trial court awarded Mother physical custody of the girls.

> Indeed, had the trial court in the instant case concluded, based upon its observation of the demeanor of the parties as well as that of the other witnesses who testified in this proceeding, that custody should be awarded to [Mother], we would be hard-pressed to say that that decision represented a clear abuse of discretion. Based as it was, however, upon the court's first-hand opportunity to gauge the credibility and emotional stability of the parties as reflected by their testimony and demeanor during the lengthy trial, the trial court's decision must be given the appropriate deference mandated under our scope of appellate review ...

*Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 255 (S.D.1984).[2] "Where the trial court had the opportunity to observe the witnesses, we will give due regard to its superior position in judging credibility." *Guardianship of Rich*, 520 N.W.2d 63, 67 (S.D.1994) (citations omitted). The trial court found Mother has been the primary caretaker of the children and it was in the children's best interests to stay with Mother. This finding is presumed correct and this court will not seek reasons to reverse. *Pearson v. Pearson*, 312 N.W.2d 34 (S.D.1981).

Both parties have faults which obviously made awarding custody a difficult decision. This is commonly encountered by our trial courts in this type of litigation. However, after reviewing all of the evidence, we cannot say that the trial court's decision was clearly against reason and the evidence. Therefore, the trial court did not abuse its discretion in awarding custody to Mother.

## II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING WIFE THIRTY–FIVE PERCENT OF THE FARM LAND HUSBAND INHERITED?

▆▆ Husband inherited one-hundred-sixty acres of farm land in March of 1991. Probate of the estate was finalized in March of 1992, some six months after Wife had filed for divorce. In dividing the marital property, the trial court awarded Wife thirty-five percent of the inherited farm property. Husband claims the trial court abused its discretion by awarding wife any of the inherited farm property.

A trial court has broad discretion in making a division of property and this court will not modify or set it aside unless there is a clear abuse of discretion. *Prentice v. Prentice*, 322 N.W.2d 880, 882 (S.D.1982); *Clement v. Clement*, 292 N.W.2d 799, 801 (S.D. 1980). The decision whether to include inherited property as part of the marital property to be divided is within the discretion of the trial court. *Laird v. Laird*, 322 N.W.2d 254, 256 (S.D.1982). "Although the trial judge should consider the fact that the defendant inherited certain property, he is not bound to set it aside for the defendant and may consider it as part of the property to be divided." *Clement*, 292 N.W.2d at 801. The factors to be considered in dividing property are the (1) duration of the marriage, (2) value of the property owned by the parties, (3)

---

**2.** The trial court entered the following findings on custody:

> 7. Linda Voelker has been the primary caretaker of Danielle and Christine Voelker since they were born:
> A. Linda has been the parent primarily responsible for taking care of the children, seeing to their needs, feeding, bathing and clothing the children.
> B. Linda has attended the girls school functions, taken them to the doctor when necessary, and given them their medication when so prescribed.

> C. Linda bought all the girl's clothing and arranged for haircuts, doctor visits and other appointments.
> ....
> 13. During the pendency of the divorce action, Paul gave Linda a list of the things he wanted and said he would trade her the girls for the property.
> ....
> 17. Linda has had some problems with alcohol abuse in the past and has dealt with these problems successfully.

ages of the parties, (4) health of the parties, (5) competency of the parties to earn a living, (6) the contribution of each party to the accumulation of property, and (7) the income-producing capacity of the assets owned by the parties. *Johnson v. Johnson,* 471 N.W.2d 156, 159 (S.D.1991); *Ryken v. Ryken,* 461 N.W.2d 122, 123 (S.D.1990); *Clement,* 292 N.W.2d at 801.

During this nine-year marriage, both of the parties worked and contributed to the family finances. Aside from the property Husband inherited, the only substantial marital asset accumulated was the home, which was awarded to Wife. Both parties are in their mid-thirties and in good health, except for Wife's alcohol abuse. Both parties have the ability to earn a living and support themselves.

When he was growing up, Husband helped his father farm this property. Wife had no involvement with the land. She did nothing to contribute to the accumulation of the property. *Cf. Garnos v. Garnos,* 376 N.W.2d 571, 573 (S.D.1985) (reversing for abuse of discretion for failure to consider property inherited during 15-year marriage where wife contributed her entire teaching income to marriage and performed domestic duties); *Prentice,* 322 N.W.2d at 882–83 (reversing property award for failure to consider inherited property where wife's work on the ranch increased the size and value of inheritance); *Laird,* 322 N.W.2d at 257 (noting wife's income and domestic duties, along with husband's inheritance, contributed to acquisition of marital property).

Probate of the estate was completed some six months after the Voelkers separated and four months before they were divorced. None of the income from the land was ever commingled with marital monies. None of the income was used to purchase marital property. None of the income from the inherited property was used to pay marital debts. Wife had no involvement with the property and made no contribution in acquiring the land.

Considering the above factors, the award to Wife of thirty-five percent of the inherited farm was clearly excessive and an abuse of discretion by the trial court. We therefore reverse and remand the division of marital property for further proceedings consistent with this opinion.

Due to our reversal of the division of marital property, child support should be reconsidered upon remand.

III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING WIFE A PORTION OF HER ATTORNEY FEES?

 The allowance of attorney fees rests in the sound discretion of the trial court. We will not disturb a trial court's award of attorney fees in a divorce action unless there was an abuse of discretion. *Ryken,* 461 N.W.2d at 128; *Garnos,* 376 N.W.2d at 574.

A trial court should consider the following elements in determining whether to award attorney fees: (1) The amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and the drawing of the cause, (5) the discovery procedures utilized, (6) whether there existed complicated legal problems, (7) the time required to try the cause, and (8) whether written briefs were required. *Peterson v. Peterson,* 449 N.W.2d 835, 840 (S.D.1989); *Garnos,* 376 N.W.2d at 574–75. In making the determination of whether fees should be awarded, the trial court should consider the property owned by each of the parties, their relative incomes, whether the property is in liquid or fixed assets, and whether the actions of a party unreasonably increased the time spent on the case. *Garnos,* 376 N.W.2d at 575.

The trial court applied the above factors in ordering Husband to pay $1,500 of Wife's $6,757.00 in attorney fees. The actions of both parties resulted in considerable time spent by their attorneys on this action—three hearings, a two and one-half day trial. Part of this was necessitated by Husband's delayed decision to contest custody. The trial court found that Husband was responsible for bringing two of the hearings before the final divorce trial. Additionally, Husband has both the larger salary and the

rental income from the farm land. The trial court's order for husband to pay $1,500 of Wife's attorney fees was not an abuse of discretion.

### IV. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING BOTH FEDERAL INCOME TAX DEPENDENT EXEMPTIONS TO MOTHER?

■ The trial court ruled that Mother, the custodial parent, could claim the federal income tax exemptions for the children. Father claims this was an abuse of discretion and he should have been awarded at least one of the exemptions.

This issue is controlled by settled precedent in South Dakota. *Earley v. Earley,* 484 N.W.2d 125, 128 (S.D.1992) *cert. denied,* — U.S. ——, 113 S.Ct. 272, 121 L.Ed.2d 200 (1992); *Brandriet v. Larsen,* 442 N.W.2d 455 (S.D.1989); *Sarver v. Dathe,* 439 N.W.2d 548, 551–52 (S.D.1989); *State ex rel. Dryden v. Dryden,* 409 N.W.2d 648, 652 n. 2 (S.D.1987). Trial courts do not have the authority to award dependency exemptions for federal income taxes.[3] Federal tax law mandates that, absent three exceptions not applicable here, the exemption goes to the custodial parent. 26 U.S.C. § 152(e)(1) (1993).

Where the trial court had ·no authority to allocate tax exemptions to the non-custodial parent, it did not abuse its discretion when it ruled both exemptions belonged to the custodial parent.[4]

### V. WHETHER EITHER PARTY SHOULD BE AWARDED ATTORNEY FEES FOR THIS APPEAL?

Both parties submitted motions for appellate attorney fees, supported by itemized statements of costs and services performed. *Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985). Based upon our application of the factors in *Senger v. Senger,* 308 N.W.2d 395, 398 (S.D.1981), we award neither party attorney fees and direct that each party pay their own expenses for this appeal.

We decline to address the other issue raised by Husband as we deem it to be without merit. *McFarland v. McFarland,* 470 N.W.2d 849, 850 (S.D.1991). The case is remanded for proceedings consistent with this opinion.

WUEST and SABERS, JJ., concur.

MILLER, C.J., concurs in result without writing.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part and dissenting in part).

I concur on a reversal of property division and the award of trial attorney fees. Because the trial court did not properly take into consideration Mother's unfitness as a parent, I respectfully dissent to awarding custody of these two girls unto her and, therefore, cannot agree with awarding the federal income tax dependant exemptions to mother.

It appears that the trial court abused its discretion because the temporal, mental and moral welfare required that they be placed in a stable and secure environment. *In Interest of A.D.,* 416 N.W.2d 264, 268 (S.D.1987). They were not. Simply put, the mother could not provide a stable and secure environment. *Id.* She has been in and out of alcohol abuse programs, but her continued alcohol abuse shows treatment has failed. The trial court also failed to consider mother's depression and attempted suicide. Mother's own mother and brother volunteered unto the trial court that the children would be "better off" with the father. Due to alcohol abuse and instability, mother had

---

3. Trial courts have the authority to modify the distribution of dependency exemptions which were allocated by a qualified pre–1985 instrument. *See Earley v. Earley,* 484 N.W.2d 125 (S.D.1992); *Brandriet v. Larsen,* 442 N.W.2d 455 (S.D.1989); *Sarver v. Dathe,* 439 N.W.2d 548 (S.D.1989); *Dryden v. Dryden,* 409 N.W.2d 648 (S.D.1987).

4. Under SDCL 25–7–6.10(3), if deviation from SDCL 25–7–6.2 is requested by either party, and upon the entry of specific findings, the trial court shall consider which parent possesses the federal income tax dependency exemption in determining whether to deviate from the child support guidelines.

three different automobile accidents. Brother testified that father, not mother, was the primary caretaker. Brother also testified mother was intoxicated on Christmas Eve of 1991; and when she drove that night, she endangered the girls by having them in the automobile with her. When mother was awarded primary custody, she apparently was unemployed. Furthermore, a Home Study ordered by the trial court under *Williams v. Williams*, 425 N.W.2d 390 (S.D. 1988), recommended that the father have physical custody, but said study was rejected.

Mother permitted her boyfriend to live in the house with her and the two girls, thus exposing the two impressionable daughters to highly improper conduct. Although ordered by the trial court to refrain from having an "unrelated man to be in the mother's home between the hours of 8:00 p.m. and 10:00 a.m., when the children are present," the male lover admitted that he had abandoned his own residence and had been residing with the mother and her minor children since the beginning of May, 1992, up until and including the time of trial. He was drawing unemployment at the time of the trial and personally testified that he had been convicted of two DUI charges.

Despite this factual backdrop, mother was awarded custody of these two girls. Exposing these girls to this relationship was contrary to their "moral welfare." In this special writer's opinion, this award of custody constitutes a clear abuse of discretion. *Anderson v. Anderson*, 472 N.W.2d 519 (S.D. 1991).

Father has been steadily employed in the same job for 14 years. Dr. Battista–Turbak, who performed the Home Study, recommended that the father have physical custody of the children. This same expert indicated that mother was untruthful about her boyfriend living in the house. The trial court also ignored the recommendation of Dr. Elwin Unruh who performed psychological examinations of the parties and the children.

Notwithstanding this weighty evidence that mother has a serious problem with alcohol abuse and is generally an unfit parent, the trial court awarded her physical custody of the girls. Some two months after said custody order, the two girls witnessed her passed out on the floor of their home. She was again admitted to a facility for in-patient treatment for alcohol abuse and lost her catering job. Under oath, she denied alcohol abuse, however, this evidence speaks contrary to her denial. A witness, Michele Christensen, testified the children would call her and ask for supper because they "could not wake Mommy up." Past actions of a parent speak louder than do the promises to improve in the future. *Matter of S.D.*, 402 N.W.2d 346 (S.D.1987).

Mommy was passed out from alcohol consumption. Mommy gets custody! These children should not be subjected to this type of conduct and abuse. Father met the burden of demonstrating that the mother's conduct had a harmful effect on the children under *Isaak v. Isaak*, 278 N.W.2d 445 (S.D. 1979). There being an abuse of discretion under the best interests of the child statute, namely SDCL 30–27–19, I would reverse. *Lindley v. Lindley*, 401 N.W.2d 732, 735 (S.D.1987). Sympathy cannot be a base for a correct civil judgment. Justice should be a search for the truth and, before us, truth was ignored.