**Philip W. LINDLEY, Plaintiff and Appellee,**

v.

**Linda L. LINDLEY, Defendant and Appellant.**

**No. 15293.**

Supreme Court of South Dakota.

Considered on briefs Jan. 15, 1987.

Decided March 4, 1987.

---

3. Perhaps a more descriptive term would be    "substantial constitutional error."

Steven K. Rabuck of Andera, Rabuck & Smith, Chamberlain, for plaintiff and appellee.

Wally Eklund of Johnson, Eklund & Davis, Gregory, for defendant and appellant.

PER CURIAM.

## PROCEDURAL HISTORY/FACTS

Linda L. Lindley (wife) appeals from a judgment and decree of divorce awarding custody of the parties' four-year-old daughter to Philip W. Lindley (husband). We affirm.

As a military dependent, wife moved often and grew up in the United States, the Orient, and France. She met husband in 1976 after her father had been transferred to Korea. Husband and wife were married on October 27, 1976, at the United States Embassy in Seoul, Korea.

Husband left the Army in 1977. He and wife moved to Florida where both worked and attended college. In 1978, husband began law school at the University of South Dakota where wife continued to pursue her college degree.

During husband's second year of law school the parties separated for six months. Shortly after their reconciliation wife became pregnant. Their daughter, Amanda Akiko, was born in Rapid City on September 24, 1980.

After graduating from law school in 1980, husband re-entered the Army. While husband was stationed in Georgia, wife cared for Amanda full-time and later completed her college degree requirements.

In July 1982, husband was transferred to Okinawa. His family joined him one month later. Initially, wife did not work in order to help Amanda adjust to the new environment. When she became an internal auditor for the Marine Corp, however, the marriage began to deteriorate.

In December 1983, husband initiated this divorce action and sought custody of Amanda. The parties appeared in Chamberlain on December 19, 1983, for a hearing to determine temporary custody of Amanda. Husband testified that wife was an excellent mother but she neglected traditional housewife duties and primary responsibility for child care rested with him. He further testified that wife verbally abused the child and developed a habit of remaining away from the home into the late hours which required husband to assume such parental responsibilities as bathing, feeding, and dressing Amanda. Husband testified at the Show Cause Hearing that he received a phone call that wife was in the hospital and upon going to the hospital, was informed that wife had her stomach pumped as the result of extreme alcohol consumption; apparently, wife had made some type of a self-destructive threat. He also testified that if he returned to Okinawa without Amanda—even under a temporary custody order—the Army would terminate his desirable family housing unit. Wife denied neglecting her responsibilities; she merely wanted husband to do his share. She was now living with her parents in San Diego seeking employment. She had sufficient housing and her mother agreed to babysit while she worked. She had only been separated from Amanda for one night since her birth.

The trial court found that both parties were good parents who loved Amanda; in fact, "both sides are about equal, and that the child would be well cared for ... no matter which was awarded custody." The

court hoped that the parties would reconcile. It found, however, that reconciliation would be difficult if husband lost his military housing. The trial court also found that if husband was not awarded temporary custody, he would have difficulty in locating suitable housing should he be awarded permanent custody. The trial court entered an Order Granting Temporary Custody which contained, inter alia, Finding of Fact 8: "... the court must consider the best interests of the child."

The divorce trial was October 19, 1984. Husband and wife stipulated that the transcript, containing their testimony at the Show Cause Hearing, could be considered as evidence, in chief, by the trial court for all purposes. The last time mother had seen Amanda was ten months earlier at the hearing for temporary custody. Wife had attempted phone contact with Amanda in Okinawa, which proved unsatisfactory, and sent cards and packages. Because of her new job as an auditor and her lack of leave she had been unable to travel to Okinawa for visits. In addition, she felt that her company's leave policy, two non-successive weeks, and her salary, $18,000 annually, would make visitation to and from Okinawa difficult. She was still living with her parents and her mother was still available to babysit.

Husband testified about his life with Amanda and the arrangements he had made for her day care, religion, and pre-school. His tour of duty in Okinawa would end July 4, 1985. At that time he could extend his Japanese tour for an additional three years; the choice was his and he was leaning toward remaining in Japan. After that, he planned to have two three-year tours of duty in the continental United States, a one-year stay in Virginia to receive a masters in law, and a terminal five-year tour.

The court ordered home studies. Husband's home study concluded that Amanda was receiving quality care and supervision from her father. Wife had temporary custody in California from October 19, 1984, to January 5, 1985. Wife's home study (originally not made a part of the record but subsequently included via order of the court upon motion by husband) recommended that custody be vested with her due to a "growing affective bond" between them. This report included a statement that "[t]he space allocation, especially for a child, is scant," referring to wife's housing with her parents. This report also included a self-description by the wife as being "spoiled, selfish," and "never having to rely on myself," yet trying to please others for which she gains satisfaction. In this report, the preparer reflected that wife had a very strong attachment to her family and wife recognized that she must prove herself—which had been a constant struggle for her. Wife expressed a desire to break away from her family and establish her own identity. Wife was extremely candid about her faults, circumstances, and outlook for the future. After her home study was completed wife had a severe disagreement with her mother and began living with her boyfriend. This entailed taking Amanda with her in this move. The preparer of the home study was unable to assess the situation and asked the court to carefully scrutinize his previous assessment in light of the changed circumstances which he termed a "dramatic change."

The trial court found that while both parties were fit and proper persons for custody, husband demonstrated his acceptance and discharge of the responsibilities of being a single parent and Amanda's best interests would be served by placing permanent custody with him. In the judgment filed January 24, 1986, wife received "reasonable visitation rights" consisting of sixty days in the summer, alternating holidays when husband was stationed in the contiguous states, and weekends if they lived within 200 miles of each other. Each party was to pay one-way transportation costs. Wife was ordered to pay $100 per month child support.

## ISSUE

Wife phrases her sole issue on appeal as "where divorced parents are equally 'fit' to

be awarded the custody of a minor child, is it an abuse of discretion for the court to award custody to one parent which results in a de facto termination of parental rights for the other parent?" Wife argues that her visitation rights are basically meaningless due to distance, and her employment and monetary situation.

## DECISION

Upon review findings of fact shall not be set aside unless clearly erroneous; due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15-6-52(a).

The paramount consideration in deciding the issue of child custody is the best interests of the child. SDCL 30-27-19. The trial court must look at all the facts and circumstances to determine what is in the child's best interest, relative to her temporal, mental, and moral welfare. *Matter of Ehlen*, 303 N.W.2d 808 (S.D.1981). It is well settled that the trial court has broad discretion in awarding custody of minor children and that the trial court's decision regarding custody will be reversed only upon a clear showing of an abuse of that discretion. *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250 (S.D.1984).

In a mobile society, opportunity and economic necessity, especially in the case of a military career, often necessitate frequent moves to distant locales. When examined in the context of a child custody dispute in a divorce proceeding no facile solution is evident.

■ In *Bolenbaugh v. Bolenbaugh*, 89 S.D. 639, 237 N.W.2d 12 (1975), we recognized that it is generally against policy to permit the removal of a child from the jurisdiction unless its welfare would be subserved thereby. Ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state; a fortiori, this holds true for removal of the child from the United States. *Id.* The best interests of the child control, however. *Id.*

In *Bolenbaugh* (decided when the tender years presumption was still in place, *see* SDCL 30-27-19) this court upheld an award of custody of a five-year-old girl to the mother and allowed the mother and child to live in Scotland, the mother's native country. This court was clearly troubled by the arrangement but said:

> Wedged between Scylla and Charybdis the trial court exercised its discretion and elected to prefer the placement of the child Karen, then but five years old, with the mother in spite of the grief and inconvenience this would visit upon the father who manifestly has also a great love and affection for his only child. One gifted with the wisdom of Solomon would perhaps have found a more acceptable solution. Less gifted mortals, nevertheless, ought not to fault the court below. The Judge has allowed to the father generous visitation privileges and has also provided the sanction of withholding support payments should these privileges not be honored. In making the choice he did this Court cannot say that he was clearly erroneous and so his decision must stand.

89 S.D. at 643, 237 N.W.2d at 14. *See Wiesner v. Wiesner*, 80 S.D. 114, 119 N.W.2d 920 (1963). Annot., 20 A.L.R.4th 677 (1983) (propriety of awarding custody of child to parent residing or intending to reside in a foreign country). Annot., 30 A.L.R.4th 548 (1984) (court authorized permanent or temporary removal of child by parent to foreign country). *See generally Matter of Ehlen, supra.*

■ As in *Bolenbaugh, supra,* we cannot say that the trial court abused its discretion by awarding custody of Amanda to father. A review of the record reveals that the trial court thoroughly considered Amanda's best interests when determining custody. The decision is well within the dictates of SDCL 30-27-19.

We also note mother's concern that the custody arrangement makes her visitation privileges difficult. Under the circumstances of this case, visitation would necessarily be difficult, no matter which parent

was granted custody. The best interests of the child prevail over the noncustodial parent's privilege of visitation. *See Presutti v. Presutti*, 181 Conn. 622, 436 A.2d 299 (1980). Should the visitation provisions of the decree of divorce prove unsatisfactory, mother may petition for modification of those rights. *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981).

Affirmed.

WUEST, C.J., disqualified.