**Julie Marie JONES, Plaintiff and Appellee,**

**v.**

**Mark Edward JONES, Defendant and Appellant.**

**Nos. 15509, 15734.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 9, 1987.

Decided May 18, 1988.

Rehearing Denied June 22, 1988.

David Alan Palmer of Strange and Palmer, Sioux Falls, for plaintiff and appellee.

Karen L. Crew of Crew and Crew, and Andrea R. Kuehn, of Crew and Crew, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

In appeals #15509 and #15734, Mark Edward Jones (father) appeals from decisions of the trial court giving physical custody of the parties' daughter to Julie Marie Jones (mother). We have consolidated the appeals for purposes of this opinion and affirm on both issues.

### FACTS

Father was 21 years old and mother was 19 years old at the time of their marriage. Their daughter, Jennifer, was born on December 14, 1984. The parties lived in Sioux Falls, where father was a mechanic and mother worked at Litton Industries and at Albertson's Grocery Store. During the marriage, primary responsibility for child care rested with mother, although father assisted with child care when mother worked nights.

In October of 1985, mother, dissatisfied with the marriage, moved out of the family home and took Jennifer with her. Mother testified that the primary reasons for the move were father's bad temper and his preoccupation with cars and television. Mother and Jennifer lived in the home of some friends for about a month before they settled into an apartment of their own. Mother continued to work at Litton until Litton laid off its assembly workers in January of 1986. She then found a job at a dry cleaners, but quit the job in anticipation of being called back by Litton. When the job at Litton failed to materialize, she obtained unemployment insurance benefits and began taking night classes at the National College of Business.

Following the separation, mother dated several men and had sexual relations with two of them. She believed that dating fulfilled her need for adult companionship. Mother admitted that she used marijuana a few times and she once went with a man to obtain some marijuana. Father also admitted using marijuana during the parties' marriage. After mother moved into her own apartment, one of her female friends roomed with her. For about a month the roommate's boyfriend also lived in the apartment. There was some drinking and drug use in the apartment at that time, but it was evidently not in the presence of Jennifer.

Father, who maintained steady employment as a mechanic during the separation, cared for Jennifer during his scheduled visitation periods and on other occasions upon mother's request. He assisted in potty training Jennifer and began taking her to church. On one occasion, father observed what appeared to be cigarette burns on Jennifer's eye and ear. Father testified that a doctor examined Jennifer and contacted the child protection agency. After monitoring the situation, the agency found no reason to take any action. During the separation, father and several of his friends tried to keep track of mother's activities to prove that she is an unfit mother. Once father put Jennifer in the car at 5:00 a.m. and drove across town to see if mother was at her boyfriend's house. In another incident, father gave mother a letter in which he stated, "I, Mark Jones, being of confused mind and body, do hereby leave to my wife my life insurance, car and retirement plan...." In the letter he also declared an intent to give away other items of personal property and stated that he was sorry if he hurt anyone.

The trial court granted each party a divorce and gave father and mother joint legal custody of Jennifer; actual physical custody of Jennifer was given to mother. The trial court stated that many of the examples of mother's conduct were "unacceptable as parental conduct," but the court attributed them to her immaturity. Despite this, the court found that from Jennifer's birth until the divorce trial,

mother was primarily responsible for the daily supervision, organization, and care of the child, "all of which she performed at a high level." Further, the trial court found that until the separation of the parties, father did not display an interest in the child's care. The trial court concluded that Jennifer's best interests would be served by awarding physical custody to mother. The trial court also intended to request that a court services officer monitor the custodial care of the child.

### ISSUE I (Appeal # 15509)

The first issue raised by father is whether the trial court abused its discretion by awarding actual physical custody of Jennifer to mother. Father argues that mother's continual movement between jobs, "nomadic lifestyle," sexual conduct, and association with persons of questionable reputation are detrimental to Jennifer, and that the child's best interests would be served by placing her with father.

The paramount consideration in deciding the issue of child custody is the best interests of the child. SDCL 30–27–19. The trial court has broad discretion in awarding custody of minor children, and the trial court's decision will be reversed only upon a clear showing of an abuse of that discretion. *Lindley v. Lindley,* 401 N.W.2d 732 (S.D.1987); *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984).

After a careful review of the record, we conclude that the trial court did not abuse its discretion in awarding physical custody of Jennifer to mother. Neither parent in this case is a model of maturity. It was undisputed, however, that mother provided most of the care and parenting during the marriage, while father did not take much of an interest in Jennifer until after the separation. Furthermore, the care which mother gave to Jennifer was high quality care. The record reflects that mother is a hard worker, holding down two jobs at one point. As for her movement between jobs, mother cannot be faulted for the periodic layoffs of Litton's assembly workers. Although mother's social activity during the separation is troubling, father failed to present any evidence showing an adverse effect upon Jennifer. Both parties admitted some use of marijuana, while other evidence, such as the letter to mother referred to above, raises questions about father's parental ability. The trial court's decision, based on its first hand opportunity to gauge the credibility and emotional stability of the parties, must be given the appropriate deference mandated under our scope of review. *Saint–Pierre, supra; Schmitz v. Schmitz,* 351 N.W.2d 143 (S.D. 1984). Since this is a very close case, under our scope of review we would be compelled to affirm the trial court whether it had found for mother or father. Accordingly, we affirm in appeal # 15509.

### ISSUE II (Appeal # 15734)

Shortly after appeal # 15509 was filed, father sought a change in custody because of mother's move from Sioux Falls to Watertown and because of a case of diaper rash suffered by Jennifer. Father claimed that these events constituted a substantial and material change of circumstances since the divorce. The trial court disagreed; it permitted mother to move to Watertown and retain physical custody of Jennifer. Father argues that the trial court abused its discretion by denying his motion for a change of custody.

A parent seeking modification of child custody has the burden of proving 1) that there has been a substantial and material change of circumstances since the decree of divorce was entered, and 2) that the welfare and best interests of the child require the modification. *Larson v. Larson,* 350 N.W.2d 62 (S.D.1984). The mere fact that conditions have changed since the entry of the decree is not sufficient in itself to warrant modification. *Huckfeldt v. Huckfeldt,* 82 S.D. 344, 146 N.W.2d 57 (1966).

Here, mother planned to move into her parents' home in Watertown. In reaching its decision, the trial court ordered a home study to be done on their residence. The study indicated that the home was neat and clean, that it provided a safe environment for the child, and that mother's par-

ents were very supportive of her. In addition, mother planned to attend vocational school in Watertown to acquire new skills. As for the diaper rash, the evidence is conflicting as to its cause. Officials of the Department of Social Services, who were informed of the rash, evidently did not think that it was a serious problem since they took no action to remove Jennifer from mother's custody. Under these circumstances, we conclude that the trial court did not err in denying father's motion for a change in custody.

### ATTORNEY FEES

■ Finally, mother has filed a petition for attorney fees on appeal. The petition is accompanied by a verified, itemized statement of costs incurred and legal services rendered, as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). After considering the factors set forth in *Senger v. Senger*, 308 N.W.2d 395 (S.D.1981), we hold that mother is entitled to attorney fees of $1,000, which cover both appeals.

Affirmed.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Expressly so stating during the trial, the court observed that there was no suggestion at trial that the father was anything but a fit and proper parent. The trial court made an absolute finding that the mother's conduct was "unacceptable as parental conduct." There was a finding by the trial court that the father was a fit and proper parent. We no longer observe the "tender years doctrine," which provided, *inter alia,* all things being equal, the mother was entitled to custody of a child of tender years. Our State Legislature abrogated this custodial preference based solely upon gender. *Prentice v. Prentice,* 322 N.W.2d 880 (S.D. 1982).

Essentially, both appeals should be reversed because there was a clear abuse of discretion in awarding actual physical custody of the minor child of these parties to the mother. A judicial discretion is not an uncontrolled one, and its exercise must have a sound and substantive basis in the testimony. *Aulner v. Aulner,* 296 N.W.2d 533 (S.D.1980).

A "rash" to this child was actually second-degree urine burns caused by the neglect of the mother. This was at a time when her conduct was being monitored by a court services officer due to her "immaturity." In other words, the trial court was watching to see what kind of a mother she would be under dictates of the decree. Needless to say, not changing the child's diapers so that the child ultimately had second-degree burns from urine, is not being a fit and proper parent for the continued custody of a child.

The record is replete of drugs, liquor, and sex, all used and displayed in the presence of this child by the mother. Such conduct is highly detrimental to this child. I would accordingly reverse and respectfully dissent.