**Martin Millage MADSEN, Plaintiff and Appellant,**

v.

**Renee Frances MADSEN, Defendant and Appellee.**

**No. 16770.**

Supreme Court of South Dakota.

Considered on Briefs March 19, 1990.

Decided May 30, 1990.

Larry A. Nelson of Minick, Nelson & McCulloch, Vermillion, for plaintiff and appellant.

Craig K. Thompson, Vermillion, for defendant and appellee.

MILLER, Justice.

In this divorce appeal, we affirm the trial court and hold that it did not err in separating custody of half-siblings.

## FACTS

Appellant Martin Millage Madsen and Appellee Renee Frances Madsen were married on May 20, 1983. At the time of the marriage, Martin had custody of two sons from a prior marriage, namely Buckner (d.o.b. 7/26/77) and Waylon (d.o.b. 11/3/78). Martin and Renee parented two children, Crystal (d.o.b. 12/12/83) and Ian (d.o.b. 9/18/85). The four children have a close, bonded relationship.

Throughout the course of the marriage, the family lived on a farm near Wakonda, South Dakota. Martin gradually began to reduce the farming operations due to financial constraints and the stress it placed on the marriage. Presently, he raises some hogs and does some custom farming.

During the time Martin was starting to leave the farming business, the family began making plans to move to Gillette, Wyoming. Martin testified that he was a heavy equipment operator and believed he could get a good job and afford to buy a nice house in that area. On July 29, 1988, Renee and the four children went to Wyoming while Martin stayed in South Dakota to close down the farming operation. Martin never did move to Wyoming, although he did make several trips to Gillette during the interim period to visit the family.

Renee had a job at a radio station which began almost immediately upon her arrival in Wyoming. The children were enrolled in a local school and actively participated in the extracurricular activities.

In January, 1989, Renee filed for divorce in Wyoming. Those proceedings were dismissed on procedural grounds, and Martin ultimately brought this action in South Dakota. In granting the divorce, the trial court, among other things, awarded the parties joint custody of Crystal and Ian, but granted Renee their primary custody and care. (Appellant was awarded summer custody of Crystal and Ian.) The trial court recognized that this would result in separating the children from their half-siblings, but found compelling reasons for such holding.

## DECISION

### ISSUE

WHETHER THE TRIAL COURT ERRED IN FINDING THAT COMPELLING REASONS EXISTED TO JUSTIFY SEPARATING THE CHILDREN.

In awarding custody of minor children, the trial court has broad discretion

and its decision will be reversed only upon a showing of an abuse of that discretion. *Jones v. Jones*, 423 N.W.2d 517 (S.D.1988); *Lindley v. Lindley*, 401 N.W.2d 732 (S.D. 1987); *St. Pierre v. St. Pierre*, 357 N.W.2d 250 (S.D.1984). In deciding issues of child custody, our primary focus is what is in the best interests of the children. SDCL 30–27–19.

■ "[T]he best interests of siblings require that they be raised together whenever possible." *Mayer v. Mayer*, 397 N.W.2d 638, 642 (S.D.1986). "[T]his principle is in no way diluted by the fact that one child is a half sibling." *Id.* at 644. We have previously recognized and held that the best interests of the child require a showing of compelling reasons before a separation of siblings will be upheld. *Miller v. Miller*, 444 N.W.2d 45 (S.D.1989); *Adam v. Adam*, 436 N.W.2d 266 (S.D.1989). "When the trial court concludes that it is [in] the child's best interest to separate siblings, it must make adequate findings of fact and conclusions of law regarding this crucial consequence of the custody arrangement." *Olson v. Olson*, 438 N.W.2d 544, 546 (S.D. 1989) (because the record was silent, we reversed and remanded).

The record in this case is replete with testimony and evidence of drug abuse, alcohol abuse and additional allegations of lack of moral scruples by both parties. The trial court heard all of this evidence and determined that there had been "no showing of unfitness by either parent." That holding is not challenged in this appeal. The sole issue raised relates to the separating of the children from their half-siblings.

In the trial court's findings of fact it found *inter alia:*

## V

Renee Frances Madsen has been the primary source of care for the children.

## VI

The parties have, in the past, allowed the use of alcohol and drugs to interfere with their care of the children.

## VII

That Renee Frances Madsen has abstained from substance abuse and undergone and completed an alcoholic treatment program since the last hearing by the Court; and that Martin Millage Madsen has abstained from the use of drugs since the previous hearing, but has not undergone any treatment program.

. . . . .

## IX

There is a five (5) year difference in ages between Crystal Madsen and Waylon Madsen, and even a greater difference between the other stepchildren.

## X

Ian Madsen has a learning disability and is at this time eight (8) months behind his age group in advancement and that Renee Frances Madsen shows deep concern for Ian's progress.

## XI

That the stepchildren have done well while with the [d]efendant in Wyoming, and have also done well with the [p]laintiff in South Dakota.

. . . . .

## XII

A family unit of Waylon Madsen and Buckner Madsen with Martin Millage Madsen exists and is good.

## XIII

That Renee Frances Madsen and her children, Crystal and Ian Madsen, have never been separated for a long time, except for short visits to see their father, Martin Millage Madsen, in South Dakota during the separation of the parties which has been approximately ten (10) months.

. . . . .

## XV

A strong bond exists between Renee Frances Madsen and her children, Ian Madsen and Crystal Madsen, as well as

between the children and their father, Martin Millage Madsen, and a strong bond exists between the siblings themselves.

.    .    .    .    .

### XVIII

That the plaintiff, Martin Millage Madsen, has been unable to show that he is capable of supporting or raising four (4) children, especially one with learning disabilities.

In the trial court's conclusions of law, it held, *inter alia:*

### III

Because of the differences in the children's age and sex and the fact that the [d]efendant, Renee Frances Madsen has demonstrated the ability to handle the particular needs and learning disabilities of Ian Madsen, these are compelling reasons for and it is in the best interests of Ian and Crystal Madsen that their mother, Renee Frances Madsen, be awarded their primary care and custody.

### IV

That the Court rules as a matter of law and finds that compelling reasons along with the dictates of Mayer v. Mayer, 397 N.W.2d 638 (S.D.1986) do exist for all of the above stated reasons including but not limited to the age and sex differences and Ian's special needs for care, and that in addition to best interests, considerations, the totality of the evidence dictates that there are compelling reasons to grant the primary care and custody of Ian and Crystal Madsen to their mother, Renee Frances Madsen.

The trial court clearly considered, analyzed and applied our holding in *Mayer.* In *Mayer* and its progeny, we did not mean to suggest that in every case where half-siblings are separated there must be some magic language included in the findings and conclusions. Our purpose in *Mayer* and the later cases was to require trial courts to give serious consideration to the issue and to identify and articulate rationale for its holding. (By way of example:

in *Adam, supra,* we held that a nine-year age difference and the fact that one parent provided a more stable and positive environment as sufficient compelling reasons; in *Miller, supra,* we held that ages and relationships between the siblings were factors to consider.) Although the trial court's reasons here are not overwhelming, they are sufficiently compelling so that we cannot say they are erroneous. The trial court clearly considered appropriate factors and determined that it was in the best interest of the children to be in the primary care of their mother. We do not believe the findings to be clearly erroneous or the holding to be an abuse of discretion.

We affirm and award appellate attorney fees of $1,000.00 to appellee.

All the Justices concur.