**Kimberly ANDERSON, Plaintiff and Appellant,**

v.

**Keith R. ANDERSON, Defendant and Appellee.**

**17285.**

Supreme Court of South Dakota.

July 10, 1991.

Rehearing Denied Aug. 16, 1991.

---

Thomas J. Nicholson of McFarland & Nicholson, Sioux Falls, for plaintiff and appellant.

Arthur L. Rusch of Bogue, Weeks, Rusch and Billings, Vermillion, for defendant and appellee.

WUEST, Justice

Kimberly and Keith Anderson were married in 1982 and lived in Centerville, South Dakota. Two children were born of this marriage, Andrew, on September 17, 1982, and Ashley, on May 25, 1984. The couple was divorced on April 18, 1985. Kimberly was granted custody of both children pursuant to an agreement between the parties.

Kimberly remained in Centerville for approximately three years after the divorce, then moved to Sioux Falls, South Dakota. In the spring of 1990, Kimberly requested permission of the court to move with the children to Columbus, Indiana.* Keith then petitioned the court for a change of custody.

The matter was heard before the trial court on May 2, 1990. Keith was awarded custody of both children and, therefore, the trial court did not rule on Kimberly's proposed move to Indiana. Kimberly appeals to this court and argues the trial court abused its discretion in changing custody of the children.

■ A party seeking a change of custody is not required to show a change of circumstances where the initial custody arrangement is based upon an agreement of the parties. *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986); *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982). However, the party requesting the custody change must demonstrate the best interests and welfare of the children require a change of custody. *Williams v. Williams*, 425 N.W.2d 390 (S.D.1988); *Mayer*, 397 N.W.2d at 640. In making this determination, the court must consider all facts and circumstances relative to the temporal, mental and moral welfare of the children. SDCL 30–27–19(1);

*Lindley v. Lindley*, 401 N.W.2d 732 (S.D.1987); *Garnos v. Garnos*, 376 N.W.2d 571 (S.D.1985). The trial court exercises broad discretion in awarding custody of children, and its decision will be reversed only upon a clear showing of an abuse of discretion. SDCL 25–4–45; *Madsen v. Madsen*, 456 N.W.2d 551 (S.D.1990); *Jones v. Jones*, 423 N.W.2d 517 (S.D.1988); *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250 (S.D.1984). In this regard, the trial court's findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a); *Lindley*, 401 N.W.2d at 735.

■ The evidence at trial revealed the following about Kimberly: She has moved twice in the last few years and had intended on moving a third time, but did not follow through with her plans. Her contemplated move to Columbus, Indiana is based on her parents' recent move to that city. Her parents have lived there for approximately six months, and Kimberly intends to work at her father's business. The children became physically ill upon learning of this intended move. She had not made living arrangements in Columbus at the time of the hearing.

Kimberly has a high school education and no trained occupational skills. She has held six different jobs in the last few years. She has worked as a bartender, waitress, and was employed by her father.

Kimberly has never belonged to any church and adamantly opposes her children attending a Catholic church. However, she believes in Christian precepts, reads the children Bible stories and prays before meals and at nighttime.

Over the last five years, Kimberly has dated several men, some of whom have slept over at her residence. On occasion, the children have observed her in bed with certain gentlemen.

* After their divorce, the parties agreed court approval was required for moving the children more than 200 miles from Centerville.

In February and March of 1990, Kimberly filed complaints with the Department of Social Services alleging abuse of the children by Keith's girlfriend, Patty (now, Keith's wife). The complaints identified incidents of abuse which allegedly occurred months before the filing of the petition. The claims were unfounded.

Kimberly was the primary caretaker of the children during her marriage with Keith. She is presently working approximately eighteen hours a week and receives government financial assistance. She testified that she loves her children more than anything and would not move to Columbus, Indiana if it meant losing custody of the children. All evidence indicated the children were well cared for and thriving in Kimberly's care.

Keith has lived in the Centerville area his entire life and is presently employed full-time in Sioux Falls, South Dakota. He has a good house available for the children, who still have friends in Centerville.

Keith's mother lives near Centerville on a farm. The children are fond of their grandmother and enjoy visits to the farm. Their grandmother has been their babysitter since they were very young.

Keith has made every visit with the children that he is allowed and has taken them on other occasions when Kimberly has requested. He has paid every child support payment required and has never accrued arrearages. This is true although he was unemployed for a period of time.

Keith met his present wife, Patty, after the divorce. He and Patty had a live-in arrangement for approximately five years before being married. Andrew and Ashley were exposed to this arrangement during the visitations with their father. Patty was expecting a child at the time of the hearing before the trial court. She is also employed full-time in Sioux Falls.

During visitations, Keith and Patty engaged in family-type activities with the children such as camping and fishing. Both children have a good relationship with Patty. Keith and Patty have tried to provide a religious upbringing for Andrew and Ashley, and Patty has considered changing her church because of Kimberly's objections to Catholicism.

In addition to Keith and Kimberly, a number of others testified at the hearing, including Keith's wife, Patty, and her sister; the childrens' paternal grandmother; Kimberly's babysitters while she resided in Centerville (one was subpoenaed to testify); and several friends and acquaintances of the parties. Also admitted into evidence was a photo album with photographs of Keith's home and family life.

In a well-reasoned Memorandum Opinion, the trial court held it was in the best interests of the children to grant Keith custody. The trial court determined a stable environment was essential for the best interests of the children, and found that Keith and Patty would best be able to provide that type of environment. Keith is a long-time resident of Centerville and the children were raised there until Kimberly moved with them in 1987. The children still have friends in Centerville and are close to their paternal grandmother, who lives near town. Keith and Patty own a home in Centerville which is capable of providing suitable accommodations for the children and both have steady employment.

The trial court's decision is supported by the record and we find no abuse of discretion. We make no allowance for attorney fees. We affirm.

MILLER, C.J., concurs.

HENDERSON, J., concurs with a writing.

SABERS and AMUNDSON, JJ., dissent.

HENDERSON, Justice (concurring).

During the course of litigation, the mother's plans changed as to where she would live and what she would do for a living. Earlier, she filed an affidavit that she would live with her parents until she could locate a home; later, she testified she did not intend to live with them. She could not tell the trial court, at trial, where she would live, how she would make a living, or where the children would attend school. In discovery proceedings, she answered inter-

rogatories expressing her home as being "residence unknown." Concerning the children's school, the answer was "UNKNOWN."

Under this vague, uncertain and shaky situation, the trial court determined it was not in the best interests of the children to remove these children from South Dakota. The trial court considered the best interests of the children in respect to their temporal, mental and moral welfare. *Lindley v. Lindley*, 401 N.W.2d 732, 735 (S.D.1987).

Father presented testimony demonstrating an immediate home available in Centerville, South Dakota, a rural setting where there was an extended family in the area. Father's mother has a close relationship with these children in this area and there are numerous cousins with whom the children may interact. We considered such factors as being important in *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982).

It appears the children became unsettled and ill during litigation. The trial court found that this stress illness was caused by the mother. Mother told them they would be going to Indiana and specifically made arrangements to have divorce papers served on their father in their presence. She told the children they would be seeing the father a great deal less. Obviously, this upset these children. It appears she inflicted, intentionally, mental trauma upon them. This did not sit well with the trial court. The trial court considered the best interests of these children. *See,* Origins and Evolution of the "Best Interests of the Child Standard," 34 S.D.L.Rev. 459, 477, and 489. This standard was considered by the trial court for it did not wish the father and his extended family to be eliminated from the children's lives. An existing home in a wholesome, secure, and loving environment was far preferable than the domestic situation which encircled them in mother's custody.

Unquestionably, the trial court was influenced by testimony that mother did not actively seek work; contrariwise, she reflected, under oath, that she could make more money from government programs than by working. Responsible employment is a good quality. Father and stepmother both had a history of steady employment. *Inter alia,* the trial court found (FF # 18) that this couple would provide a better work example for the children.

Under the Court's scope of review, we must consider the trial court's opportunity to gauge the credibility and the emotional stability of the parties. We owe a deference to the trial court's personal observation of these parties in the courtroom. *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 255 (S.D.1984). Here, the trial court has broad discretion and we can only reverse upon a clear showing of an abuse of discretion. *Madsen v. Madsen*, 456 N.W.2d 551, 553 (S.D.1990). Under the facts of this case, there is no abuse of discretion in awarding these children to the father. On July 1, 1979, our State Legislature specifically repealed the "tender years" rule. Furthermore, the trial court's findings are presumptively correct. *Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964).

AMUNDSON, Justice (dissenting).

Kimberly Anderson, in compliance with the judgment and decree of divorce entered in this case, filed a motion with the court seeking permission to move to the State of Indiana. The result of this compliance was a loss of custody of her minor children.

The majority finds that the children "were well cared for and thriving in Kimberly's care." The record discloses that Kimberly receives aid, works part-time, has dated several male individuals since the divorce who have slept overnight at her residence so that the children could observe such conduct, and has moved on two occasions since the divorce was granted on April 18, 1985. (Hardly what could be described as a nomadic life-style.) Kimberly further stated under oath that if the proposed move to Indiana for a job opportunity would mean a loss of her children, she would forego this opportunity.

The father's evidence at the time of hearing on this custody dispute came from Keith, Keith's new wife, Keith's mother and the children's grandmother and friends. Kimberly testified in her own be-

half and presented the testimony of two friends who had observed how she cared for the children, what she did for recreation with the children, and how she maintained her home. There was no home study made of the parties' homes nor were the children evaluated in order to determine what type of an impact, if any, a change in living arrangement would have on the children if they were removed from the home of their mother who had cared for and nurtured them since their birth. The evidence presented in this case could hardly be characterized as having come from impartial or disinterested persons.

This court has held that in cases as important as child custody disputes, a trial court, while acting in its role as parens patriae, has a duty to insure that the best interest of the minor children is being served. *Williams v. Williams*, 425 N.W.2d 390 (S.D.1988). The trial court has the right and the duty to have appropriate studies and evaluations made in cases of this nature, even if counsel and the parties fail to present all types of evidence needed for making an informed, fair, and impartial custody decision.

This record is devoid of any evidence which showed an adverse effect upon the children as a result of their mother's lifestyle. *Jones v. Jones*, 423 N.W.2d 517 (S.D.1988). No evidence was presented which reflected adversely on the children's educational progress while in their mother's custody. This is not a case where the mother did not provide a stable home, was involved in a strained relationship, was facing criminal charges, leaving the children alone or having substantial financial problems. *Olson v. Olson*, 438 N.W.2d 544 (S.D.1989). Quite to the contrary. Kimberly was providing a home where the children were thriving and being well taken care of. There is no question that she did not have the resources to provide the children with new bikes or a Nintendo game, which were available at the father's home, but could not be brought back to the children's home in Sioux Falls. (It is a foregone conclusion that young children's affections can at time be purchased with material things.) In fact, the father and his new wife (mother-to-be) had sufficient resources to hire a private investigator to attempt to ferret out damaging evidence against the mother. It is obvious that the investigator was not successful in finding the bomb to be dropped at the hearing in view of the fact that the record is devoid of any evidence from this "Paul Drake."

This case seems to hold that if you receive aid, do not have a full-time job (the custodial parent made her decision to not hold down a full-time job due to the adverse economic impact that would have on her ability to provide for the necessities of the minor children), have boyfriends (even though your ex-husband lived out of wedlock with the new Mrs. Anderson for a number of years which relationship the children were also exposed to), keep a clean and stable home environment, love and care for your children and walk your children to school, that you are not a fit and proper person to have custody. This is not a message this court should send out on a record which is devoid of any negative, credible evidence that living with the mother had an adverse impact on these children. *Haak v. Haak*, 323 N.W.2d 128 (S.D.1982). Even though the legislature has repealed the tender years doctrine, all things being equal, as the record in this case seems to show, there is still no substitute for the care, guidance, love, and devotion given to these young children by Kimberly, which is unrefuted in this record. *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978).

I would reverse and remand back to the trial court with directions that a home study be completed on the parents' homes and the children be evaluated by a child psychologist for determining what effect this uprooting from the mother's home would have on their mental health and well being.

I am authorized to state that Justice Sabers joins in this dissent.