Andrew Dean HULM, Plaintiff and Appellant,

v.

Rhonda Jean HULM, Defendant and Appellee.

No. 17498–a–RAA.

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1992.

Decided April 22, 1992.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for plaintiff and appellant.

Timothy Tobin, Ellsworth AFB, for defendant and appellee.

AMUNDSON, Justice.

Andrew Hulm (Father) appeals a trial court order denying his request for a change of custody. We affirm the trial court.

### FACTS

Father and Rhonda Hulm (Mother) were married in September 1983. Stephanie, the couple's only child, was born in January 1985. The couple separated several times during their marriage. In August 1989, during one of these separations, Father filed for divorce. It was a "friendly" divorce and Mother and Father agreed to a stipulation that resolved all marital issues. Under the stipulation, Mother retained custody of Stephanie, Father received substantial and specified visitation rights, and Father agreed to pay child support of $150 per month. The trial court reviewed and approved this stipulation and entered a decree of divorce incorporating its terms.

On May 7, 1990, Father filed a motion to change custody of Stephanie. Father alleged that Mother was allowing a male friend to spend the night in her bedroom while Stephanie was in Mother's apartment. Father also alleged that Mother had not been cooperative in arranging visitations and had resisted his attempts to give Stephanie religious training and have her baptized into the Catholic faith.

Mother resisted the motion to change custody. Mother admitted that her male friend occasionally stayed overnight in her apartment while Stephanie was there. Mother contended that Stephanie (then approximately five years old) was not harmed by this relationship. Mother perceived nothing wrong with her behavior.

Mother said she had not prevented Father from taking Stephanie to church when he had custody. Mother is not Catholic and objected to Stephanie's baptism into the Catholic faith. Mother testified she did not attend church and preferred to wait until Stephanie was older and could choose her own faith.

Mother asserted that she had been cooperative with all visitation requests she considered appropriate. She contended that Father had been allowed visitation with Stephanie on numerous occasions beyond those required under the divorce decree. Mother admitted she denied several of Father's visitation requests but explained that Father would call on short notice whenever he was in Rapid City and expected to be allowed to pick Stephanie up for a couple of hours of unscheduled visitation.

A hearing was held on the custody issue on July 20, 1990. On August 23, 1990, the trial judge issued a lengthy memorandum decision denying the motion to change custody. The trial judge held that it was not in the best interests of the minor for Mother to have her male friend spend the night while Stephanie was present in her apartment. The trial judge gave Mother an opportunity to modify her behavior. He explained that if she agreed to discontinue hosting her male friend while Stephanie was there, she would retain custody. Otherwise, Father would be awarded custody.

Similarly, the trial judge determined that since Mother was not providing Stephanie with specific religious training, it was inappropriate for her to prevent Father from doing so. Again, Mother was given a choice. To retain custody she was required to allow Father to provide Stephanie with religious training.

Mother agreed to modify her behavior. The trial court entered findings of fact and issued an order denying the motion for change of custody. The trial court also increased Father's child support obligation. Father appealed.

## DECISION

■ When a divorce decree is based on an agreement between the parties, custody may be modified in subsequent proceedings without the necessity of a "substantial change in circumstances." *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988). Thus, the party seeking modification must only show that the best interests and welfare of the child requires a change of custody. *Id.* at 393. We will not reverse the trial court's decision unless there has been a clear abuse of discretion. *Id.* There is no abuse of discretion if "a judicial mind, in view of the law and circumstances, could reasonably have reached that conclusion." *State v. Rose*, 324 N.W.2d 894, 896 (S.D. 1982).

■ The trial court decided to give Mother an opportunity to change her objectionable behavior.* Although the trial court found that Mother's behavior had been inappropriate, there was no evidence that Stephanie had suffered harm by that behavior. To insure Stephanie's best interests and welfare in the future, the trial court indicated that Father simply has to revive the issue before the trial court if Mother continues or resumes the inappropriate behavior.

When Father filed the motion for change of custody his primary concern was that Stephanie was being subjected to this inappropriate sexual relationship between Mother and her male friend. Father's professed goal was to prevent this activity by having custody changed. The trial judge evaluated the situation and determined that the problem could be resolved without the dramatic and possibly traumatic effects of a change in custody. The trial judge was

in a position to gauge the character of each parent and decided that with a little judicial tutelage Mother would conform her behavior to acceptable norms. The trial judge eliminated the problem while avoiding the destabilizing effect of a change in custody. While the trial court's approach was novel, we cannot say it was an abuse of discretion.

We do not address Father's argument concerning the change in child support because that issue was not properly preserved for appeal. *See Matter of Adoption of Baade*, 462 N.W.2d 485 (S.D.1990); *Matter of Estate of Donahue*, 464 N.W.2d 393 (S.D.1990).

■ Both Father and Mother have requested appellate attorney's fees. This case presents an unusual situation. Although Father has not prevailed in this appeal it is clear that he was acting in the child's best interests. As a result of Father's initiation of the underlying action, Mother has been made to correct her unacceptable behavior. The trial court resolved the case in a novel manner which Father may have reasonably believed should be reviewed by an appellate court. Under these circumstances we choose to have each party bear the expense of their own appellate attorney's fees.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice, dissenting.

And so—it is not by the fruits that you shall know them nor be judged—but rather—their words of promise in the future?

---

* The trial court's memorandum decision explained:

> There is in the Court's determination no easy answer in this case. If the mother will agree that she will have no man in her home past the hour of 11 p.m. or prior to the hour of 9 a.m. while the child resides under her roof; and if she will agree that she will have no intimate relations with a man at any time under the circumstances at any place where she and the daughter are within the same dwelling; and if she will agree to present a plan to the Court of how she is going to commence providing some sort of spiritual opportunity for the young lady to learn about God while in her custody, the Court is not going to change legal custody at this time.

| MOTHER | FATHER |
|---|---|
| ● Did not want the child baptized. | ● Father did. |
| ● Did not attend church. | ● Father did and took child to church. |
| ● Wanted child to choose a religion, years hence. | ● Father thought the little girl needed religious instruction now. |
| ● Arbitrarily, and repeatedly, denied visitation of the little girl. | ● Always allowed mother visitation when he had the child. |
| ● Had sexual relationship(s) at her abode, child in the home; expressed this was acceptable conduct. | ● Heartily took exception. Mother said "Fuck you, its none of your business" and hung up phone. Transcript, page 24. |
| ● Has moved twice since the parties' separation. | ● Lives in same home in city of Philip, where he is Chief of Police. |
| ● Admitted to sexual liaisons, under oath, when child was in her custody. | ● Requested mother on several occasions to stop this conduct. |
| ● Admitted to lying to the child concerning her boyfriend sleeping with her overnight. | ● Testified little girl saw partially clad man in A.M. brushing his teeth, eating breakfast. |
| ● Upon learning Judge found her conduct "completely and absolutely intolerable," signed affidavit that she would comply with Judge's directive to change her conduct and lifestyle. | ● Lost case; took appeal to this Court. |

Although the trial court was creative, and sought reformation of mother, this case should be decided on precedent in this Court. Mother's reformation is not the issue. In determining child custody, we have historically taken the position that it is the best interests of the child which must be considered. *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979). Child was aware of mother's conduct. She complained that her "mommy locked the door all the time," when a certain boyfriend spent the night with Mommy. (Mommy's bedroom; child could not close out the day with her Mommy). Poor little child; bad mother!

This Court has seen fit to decry this type of conduct (where child is aware of parental misdeeds), resulting from the commission of indiscretions in child's presence. *See, Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979) and *Wolff v. Wolff*, 349 N.W.2d 656 (S.D.1984). Here, child complained that she had to knock on the bedroom wall because Mommy locked the door (with boyfriend therein), to attract the mother's attention, is indicative of mother's improper behavior. Pathetical scenario!

We decried this conduct as early as *Yager v. Yager*, 83 S.D. 315, 159 N.W.2d 125 (1968). We particularly were concerned with the moral concepts of the mother plus "an unsuitable environment." In trial court's memorandum decision, this expression is noted: "Free sex is a detriment to family stability and is to be discouraged." In point of procedural truth, trial court entered Findings of Fact and Conclusions of Law that the mother's involvement with a certain male companion, under the same roof as the child, was not in the best interests of the child. Therefore, it appears to be an abuse of discretion by the trial court to not change the custody of the little girl from mother to father. Perforce, I must dissent. Heaven is about us in our infancy and, as infants, having no past or future, the present should be there to enjoy and experience. Life was anything but pleasure or wholesome for this little child.

Mother has been moving about; father stays rooted in his home and vocational calling. In *Anderson v. Anderson*, 472 N.W.2d 519 (S.D.1991) written by our im-

mediate past Chief Justice, a majority of this Court looked unkindly upon a transient lifestyle. In *Anderson,* mother was not permitted to have custody because, further, she permitted men to sleep at her residence while the children were in the household.

Old but true: like cases should be treated alike. I'm stare decisis all the way. Creative judgment? Yes, indeed. Compassionate treatment of mother? Very definitely. But in the best interests of this little girl? In my opinion, no.

If father were awarded custody, mother has an opportunity to concentrate upon, and to rectify, her inappropriate behavior. She could, in the future, come to the trial judge, and plead with His Honor: "Judge, I've changed." Procedurally, she could proceed with an Order to Show Cause. But that is down the road to be seen and proven in a court of law. An affidavit that I will be a good Mommy at this juncture does not measure up against the pre-divorce performance and stability of the father. In essence, the case should be decided upon past deeds and conditions, not upon a promise to be good in an affidavit.

Father would be awarded $1,000.00 appellate attorney's fees under my thesis. Mother would be awarded naught as she is the losing litigant.