1996 SD 38

**Del R. FOSSUM, Plaintiff and Appellee,**

v.

**Lori A. FOSSUM, Defendant and Appellant.**

**No. 19048.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1995.

Decided April 10, 1996.

Thomas P. Tonner of Tonner, Tobin & King, Aberdeen, for plaintiff and appellee.

Rory King of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellant.

PER CURIAM.

[¶ 1] On November 1, 1993, Del R. Fossum's (Father) and Lori A. Fossum's (Mother) judgment and final decree of divorce was filed. Actual physical custody of ten-year-old Kari and seven-year-old Kendell (Daughters) was placed with Mother during the school year and Father during the summer months.

[¶ 2] One year later, on November 16, 1994, the trial court entered findings of fact, conclusions of law, and an order which changed the custody arrangement. Actual physical custody of the girls was given to Father during the school year and Mother during the summer. The court found that Mother's seventy-mile-move from Claire City, South Dakota to Watertown, South Dakota, was not in Daughters' best interests and concluded that the move constituted a substantial and material change of circumstances. Mother appeals. We reverse.

## FACTS

[¶ 3] Mother and Father married on July 23, 1983, in Claire City, South Dakota. Daughter Kari was born January 3, 1984; Daughter Kendell was born February 28, 1987.

[¶ 4] Mother worked at Harvest States Cooperative Elevator in Claire City and played in a country western band. Her net income was $1,148 monthly. Father, a self-employed

farmer, has an average monthly net income of $1,001.

[¶ 5] When Mother and Father divorced, the trial court found and concluded "[t]hat it is in the best interests of the two children of the parties, to take advantage of the particular strengths of each parent" that actual physical custody of the children be placed with Mother during the course of the school year and Father during the summer months. The parties were directed to confer on major decisions affecting the children's welfare. In the case of disagreement, Mother's decision controlled because she "has played the major role in matters of health, education, and religious training."

[¶ 6] The divorce decree was filed on November 1, 1993. Pursuant to the decree, Mother had custody of Daughters since it was the school year. When the school year ended in New Effington in the spring of 1994, Father had actual physical custody of the children for the summer months.

[¶ 7] Following the divorce Mother continued working as a secretary for Harvest States Elevator in Claire City, a position she had for over eight years. She was not actively seeking other employment, but was concerned about her job security since elevator employees had been informed that the elevator was for sale and it was rumored that the elevator would close.

[¶ 8] In June 1994, Mother's mother showed her an ad for a bookkeeping position with Intercept in Watertown. Mother thought about applying for a week and then typed a resume and mailed it. She was informed that the position was filled.

[¶ 9] One month later Intercept contacted Mother about a drafting position that had opened. (Mother has an associate degree in architectural drafting and estimating). Mother met with her attorney to see if there was any reason she could not interview for the job. She interviewed and was offered the job.

[¶ 10] Before accepting the job Mother investigated Watertown's housing market, school system, and extracurricular activities. She took Daughters to Watertown where they toured a home she was considering pur-

chasing, as well as a school and the Boys and Girls Club. They also met with teachers. Mother discussed the implications of a possible move with Daughters. Daughters were apprehensive yet excited about the prospect.

[¶ 11] Mother agreed to "try" the job in Watertown. Her manager at the Claire City elevator held her position open for the two week trial period. During this time, and the subsequent two weeks, Mother commuted to Watertown. When she decided to accept the job permanently, Mother wrote to Father through his attorney, and explained her considerations in making the decision.

[¶ 12] When Father received Mother's letter, he asked the court for an order to show cause why custody of the children should not be transferred to him. In his affidavit, dated July 12, 1994 and filed August 18, 1994, Father contended that a move from Claire City to Watertown was a material and significant change in circumstances since the children had strong emotional, school, and familial ties to Claire City and Claire City was a safer place to live than Watertown.

[¶ 13] During the weekend of August 28–29, 1994, custody of the children was returned to Mother since the school year was beginning that week. By then, Mother was purchasing a home in Watertown and had enrolled the children in school four blocks from the home. Father was angry that the children were beginning school in Watertown.

[¶ 14] The show cause hearing was October 13, 1994. The children had lived in Watertown for six weeks. Weekends were alternated between Mother in Watertown and Father in Claire City. At the hearing, Father and Mother testified. Each submitted affidavits supporting their respective contentions. Daughters did not testify and the trial court did not interview them in camera.

[¶ 15] Father testified that Mother's move to Watertown bothered him because he believed it was the first step toward moving to Sioux Falls or out-of-state. He intends to remain in the Sisseton area and believes that he offers stability to the children. According to Father, the children love the farming community and the school system offers smaller

class size and more individual attention. He would continue the children's music and dance lessons as well as church and Sunday school attendance which he claimed was sporadic in Watertown. He would also arrange for babysitting rather than sending Daughters to a day care "institution" when he is unable to care for them.

[¶ 16] Father submitted five affidavits in support of his position. These affidavits were from the mothers of various friends of Kendell and Kari. According to the mothers, Kendell and Kari had told their daughters that they did not like either their new school or the Boys and Girls Club and wanted to remain in school at New Effington with their friends.*

[¶ 17] Mother testified about her motivation for moving to Watertown. In addition to the reasons set forth earlier, Mother was concerned about Father's financial stability (he owed her mother $70,000, a cattle debt of $22,000 and money to Mother under the divorce decree which is unpaid) and wanted to make sure that she could financially support Daughters. While she could not foresee the future, she has no plans to move outside of Watertown. Her employer is stable and she has a thirty-year-mortgage that is her sole responsibility.

[¶ 18] Mother denied telling Daughters to keep the move a secret from Father. She testified that she attempted to work with Father to ease Daughters' transition to Watertown, but Father was not receptive and told Daughters that they did not have to go to Watertown. Mother found that she and Daughters had each experienced what she considered the normal stresses associated with the changes any move entails. She felt that everyone was adjusting very well. Daughters were busy decorating their new room. Teachers and counselors reported that Daughters were doing well academically and making friends. Each day after school they spend 1½ hours at the Boys and Girls Club, a facility offering a pool, rec room, computer room, library, and one-on-one attention. Mother is Kendell's Brownie troop leader. Kari has started saxophone lessons and both girls would continue piano lessons

under Mother's tutelage when the piano was delivered that Saturday. The family was in the process of choosing between two churches and the girls would begin Sunday school when that decision was made. In addition, Mother encouraged phone calls and letters to Daughters' Claire City friends and they were planning to bring these friends to Watertown for a slumber party.

[¶ 19] At the close of the show cause hearing the trial court said:

All right. Okay. I want to review my notes from the first trial and I'll render a decision in the near future. The law basically is that there are two things I have to consider. One is that there's a change in circumstances here. Clearly there is. Mrs. Fossum moved to Watertown. Secondly then what's in the kids' best interests. And so I will mull that over and render a decision.

In its memorandum decision, entered the next day, the court continued to use the "change in circumstances" standard, finding it existed by virtue of the move from Claire City to Watertown. The court noted that the original custody decision tipped in Mother's favor 51% to 49%. The move, however, in the court's view, showed troubling consequences for Daughters since they lost their Claire City stability and support.

[¶ 20] Mother's attorney pointed out that the first prong of the two prong standard is not whether circumstances changed, but whether there had been a substantial and material change in circumstances since the divorce decree was entered. The court's letter response was incorporated into the findings of fact and conclusions of law:

All cases concerning change of circumstances appear to be fact specific. There clearly is no bright line. In this case, the children have had their home changed, their school changed, uprooted from daily contact with friends and family in the Claire City area, changed from regular church and Sunday School attendance in Claire City to sporadic or non-attendance in Watertown, had numerous strange men in their home who maintained social rela-

---

* The record shows that the children were not

interviewed regarding their views on the move.

tions with their mother, terminated daily contact with their father and all other matters which would result from a move from a close-knit rural community to a more urban city.

The material nature of these changes can be reduced to this: had the Court been given the facts at trial that it is now given at this motion for change of custody, it would have adopted the plan it now adopts as in the best interests of the children. In this Court's mind, that is certainly a "substantial and material change in circumstances."

[¶ 21] Mother and Father were given joint custody of Daughters. Father received actual physical custody during the school year and Mother received it during the summer. While the parties were to confer on major decisions affecting the children, Father's decision was to control. Mother's motion to stay the custody decision pending appeal was denied.

## ISSUE

[¶ 22] **I. Did Mother's seventy-mile move from Claire City to Watertown constitute a substantial change of circumstances?**

## DECISION

[¶ 23] In *Kappenman v. Kappenman*, 523 N.W.2d 410, 413 (S.D.1994) this Court set forth the applicable standard of review for this case:

The trial court's findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a).

*A parent seeking modification of child custody has the burden of proving 1) that there has been a substantial and material change of circumstances since the decree of divorce was entered and 2) that the welfare and the best interests of the child require modifications. Jones v. Jones, 423 N.W.2d 517 (S.D.1988). The mere fact that conditions have changed since the decree is not sufficient in itself to warrant modification. Huckfeldt v. Huckfeldt, 82 S.D. 344, 146 N.W.2d 57 (1966). Not every*

*significant change justifies a transfer of custody. Ludwig v. Burchill, 481 N.W.2d 464 (N.D.1992). Either factor standing alone will not justify a change of custody—both must be present. This is a heavy burden, but the courts, the parties and especially the children must be protected from endless and vexatious litigation and the resulting uncertainty flowing therefrom. Hanks v. Hanks, 334 N.W.2d 856, 858 (S.D.1983).*

The trial court has broad discretion in awarding custody of minor children and the trial court's decision will be reversed only upon showing of an abuse of discretion. *Anderson v. Anderson*, 472 N.W.2d 519 (S.D.1991); *Kost v. Kost*, 515 N.W.2d 209 (S.D.1994); *Jones v. Jones*, 423 N.W.2d at 519. A judicial discretion is not an uncontrolled one, and its exercise must have a sound and substantive basis in testimony. *Aulner v. Aulner*, 296 N.W.2d 533 (S.D.1980).

(emphasis added).

[¶ 24] Thus, the question is whether circumstances have changed substantially and materially since the divorce was entered. The trial court concluded that the seventy-mile move from Claire City to Watertown constituted a substantial and material change of circumstances.

[¶ 25] The general rule is that insignificant geographical changes generally will not constitute a substantial change in circumstances. 2 Arnold H. Rutkin, ed. *Family Law and Practice* § 32.10[6](f) (1995). This Court has adhered to this general rule. In *Powell v. Powell*, 336 N.W.2d 166, 168 (S.D. 1983) we said:

In *Ehlen, supra*, [303 N.W.2d 808 (S.D. 1981)] the mother moved the children approximately 1500 miles away. Here, the mother moved approximately two and one-half hours away by car, according to the testimony of the father and mother at the hearing. Unquestionably, such a move is not so great a distance as to constitute a substantial and material change as the move was in *Ehlen*.

Similarly, this Court denied a father's motion for a change of custody based upon mother's

move from Sioux Falls to Watertown and Daughter's case of diaper rash. *Jones v. Jones*, 423 N.W.2d 517 (S.D.1988). *See, e.g., In re Marriage of Howe*, 471 N.W.2d 902 (Iowa.Ct.App.1991) (father's move of 42 miles from where children lived at time of divorce is not a material change warranting a change of custody); *Dobbins v. Dobbins*, 584 So.2d 1113 (Fla. 1st DCA 1991) (relocation from Tallahassee to Jacksonville did not constitute a material change in circumstances for purposes of modifying custody).

[¶ 26] The trial court delineated reasons to support its view that the move was a substantial and material change of circumstances affecting Daughters' best interests had occurred. These included a) a change in home, b) a change of school, c) lack of daily conduct with friends and family in the Claire City area, d) termination of daily contact with Father, and e) a higher crime rate in Watertown than Claire City. While each of these factors is true, each is a natural consequence of any move. "Any divorce and any relocation will impact the noncustodial parent's role in a child's life. [S]ociety is mobile and opportunity and economic necessity often necessitates moves[.]" *Fortin v. Fortin*, 500 N.W.2d 229, 232 (S.D.1993). In this case the short distance of the move minimizes the impact of these factors. The trial court also found:

> That because of the move to Watertown, the girls have lost their stability and support systems which existed in Claire City which was the deciding factor in initially granting custody to the Defendant [Mother] during the school year.

In the original findings of fact in the divorce, however, the court mentioned the "good support system based on family and friends for the girls' care in their [Mother and Father's] absence," but based its custody decision "to take advantage of the particular strengths of each parent." Mother received actual physical custody during the school year because she provided an excellent home, and provided the major role in matters of Daughters' health, education, and religious training. There was no evidence that this had changed since the divorce. While the move did affect the Claire City support system, Mother was making efforts to preserve it and Father's liberal visitation schedule certainly preserved the parental relationship and maintained familial contact.

Starting with the proposition that the parties cannot relitigate the correctness of the original custody disposition, as we must, we find that the plaintiff herein has failed to sustain the burden of proof falling upon her. In borderline cases, as this was, we recognize that the parent not having custody might be tempted to relitigate the custody issue in the hope that a change in the composition of the Supreme Court might change its opinion. But this would not be fair either to the parties or the children and we will be especially vigilant to avoid rewarding persistence in this type of case.

*Masek v. Masek*, 90 S.D. 1, 6, 237 N.W.2d 432, 434, (1976).

[¶ 27] The trial court admitted that the original custody decision was close. The determinative factors that the court found at the time of the divorce were not changed by this move and certainly this move did not constitute a showing of a substantial and material change warranting a change in custody. The trial court abused its discretion in changing custody.

[¶ 28] Reversed.

[¶ 29] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., participating.

[¶ 30] GILBERTSON, J., disqualified.